UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :

NEW YORK STATE VEGETABLE GROWERS
ASSOCIATION, INC. *et al.*,                    :     Civil Action No. 1:23-cv-01044-JLS

                       Plaintiffs,      :

                    v.              :

KATHLEEN HOCHUL, in her official capacity, *et al.*  :

                     Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

 

KAREN CACACE
Bureau Chief
Labor Bureau

YOUNG LEE
Deputy Bureau Chief
Labor Bureau

LETITIA JAMES
ATTORNEY GENERAL OF NEW YORK

28 Liberty Street
New York, New York 10005
(212) 416-6251

By:   Karen Cacace (admission pending)
      Anielka Sanchez Godinez
      Assistant Attorneys General

      Abigail Ramos
      Attorney General Fellow

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. STATEMENT OF FACTS .......................................................................................... 2

    A.   Statutory Framework .......................................................................................... 2

    B.   General PERB Procedures .................................................................................. 5

    C.   H-2A Program .................................................................................................... 7

    D.   Factual History with Respect to Each Farm Plaintiff ........................................ 8

III. ARGUMENT .......................................................................................................... 12

    A.   Legal Standard for Preliminary Injunction ...................................................... 12

    B.   Plaintiffs Fail to Show That Their Claims Are Likely to Succeed on the Merits
       13

      1.   Plaintiffs Lack Standing to Bring Claims on Behalf of Farmworkers and Cannot In Any
    Event Show a Likelihood of Success on Those Claims (Counts V, VII, VIII, IX, and X) ... 13

      2.   Plaintiffs' Claims Are Not Ripe .................................................................... 16

      3.   FLFLPA Is Not Preempted by Federal Law and Does Not Violate the Contracts Clause
    (Counts I and X) .............................................................................................. 19

      4.   PERB's Proceedings Provide Adequate Process (Counts II and III) ............................ 23

      5.   Compulsory Impasse Arbitration Does Not Violate Plaintiffs' Due Process or Equal
    Protection Rights (Count V) ............................................................................. 28

      6.   FLFLPA Does Not Violate the First Amendment (Count VI) ....................................... 31

      7.   Plaintiffs' Vagueness Challenge Likewise Lacks Merit (Count IV) ............................. 34

      8.   Plaintiffs' Equal Protection Claims Lack Merit (Count V and IX) ............................... 36

    C.   Plaintiffs Have Not Alleged Irreparable Harm or Demonstrated that an
    Injunction Is in the Public Interest ................................................................... 38

IV. CONCLUSION ....................................................................................................... 39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Lab'ys. v. Gardner,*
  387 U.S. 136 (1967)...................................................................................................................16

*Abrams v. Allen,*
  297 N.Y. 52 (1947) ...................................................................................................................33

*Allstate Ins. Co. v. Serio,*
  261 F.3d 143 (2d Cir. 2001).......................................................................................................35

*Analytical Diagnostic Labs, Inc. v. Kusel,*
  626 F.3d 135 (2d Cir. 2010).......................................................................................................37

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015)...................................................................................................................22

*Ass'n of Car Wash Owners Inc. v. City of New York,*
  911 F.3d 74 (2d Cir. 2018).........................................................................................................20

*BE & K Constr. Co. v. NLRB,*
  536 U.S. 516 (2002)...................................................................................................................33

*Blessing v. Freestone,*
  520 U.S. 329 (1997)...................................................................................................................22

*Brody v. Vill. of Port Chester,*
  434 F.3d 121 (2d Cir. 2005).......................................................................................................24

*Bronx Household of Faith v. Bd. of Educ.,*
  331 F.3d 342 (2d Cir. 2003).......................................................................................................38

*Cedar Point Nursery v. Hassid,*
  141 S. Ct. 2063 (2021)...............................................................................................................22

*Cemex Construction Materials Pacific*
  372 NLRB No. 130 (2023) .........................................................................................................6

*Cent. Rabbinical Cong. v. N.Y.C. Dep't of Health & Mental Hygiene,*
    763 F.3d 183 (2d Cir. 2014)................................................................12, 39

*Charles Wolff Packing Co. v. Ct. of Indus. Rels.,*
    262 U.S. 522 (1923).........................................................................14, 30

*Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.,*
    620 F.3d 146 (2d Cir. 2010).....................................................................25

*City of Buffalo v. N.Y.S. Dep't of Env't Conservation,*
    No. 04-CV-0693E(Sc), 2007 WL 9777732 (W.D.N.Y. Sept. 21, 2007)................................13

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985).............................................................................37

*City of New Orleans v. Dukes,*
    427 U.S. 297 (1976).............................................................................37

*Coal. for Competitive Elec. v. Zibelman,*
    906 F.3d 41 (2d Cir. 2018)......................................................................21

*Concerned Home Care Providers, Inc. v. Cuomo,*
    783 F.3d 77 (2d Cir. 2015)................................................................... 19-20

*Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n,*
    491 U.S. 299, 302 (1989).......................................................................30

*Copeland v. Vance,*
    893 F.3d 101 (2d Cir. 2018).....................................................................34

*Crout v. Haverfield Int'l, Inc.,*
    269 F. Supp. 3d 90 (W.D.N.Y. 2017)............................................................20

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,*
    485 U.S. 568 (1988).............................................................................33

*Expressions Hair Design v. Schneiderman,*
    581 U.S. 37 (2017)..............................................................................34

*FCC v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993).............................................................................37

*Fed. Election Comm'n v. Cent. Long Island Reform Immediately Comm.,*
    616 F.2d 45 (2d Cir. 1980)......................................................................16

*Ford v. Shalala*,
  87 F. Supp. 2d 163 (E.D.N.Y. 1999) ............................................................. 23-24

*Frey v. Nigrelli*,
  661 F. Supp. 3d 176 (S.D.N.Y. 2023)...................................................................13

*Garcia v. Stewart*,
  531 F. Supp. 3d 194 (D.D.C. 2021) ......................................................................14

*Gerawan Farming, Inc. v. Agric. Lab. Rels. Bd.*,
  405 P.3d 1087 (Cal. 2017) ..................................................................... 29-30, 38

*Gibson v. Berryhill*,
  411 U.S. 564 (1973)................................................................................................26

*Harris, Upham, & Co.*,
  Ex. O(10), 10 SLRB 279 (1947) ...........................................................................34

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246 (1994)................................................................................................30

*Hernandez v. State*,
  173 A.D.3d 105,114 (3d Dep't 2019) .....................................................................3

*Hess Collection Winery v. Agric. Lab. Rels. Bd.*,
  140 Cal. App. 4th 1584 (Cal. Ct. App. 2006) .......................................................29

*Hill v. Colorado*,
  530 U.S. 703 (2000)........................................................................................34, 36

*Holve v. McCormick & Co.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) .................................................................19

*Horne v. Polk*,
  242 Ariz. 226 (2017)..............................................................................................26

*Hu v. City of New York*,
  927 F.3d 81 (2d Cir. 2019).....................................................................................38

*Hund v. Cuomo*,
  501 F. Supp. 3d 185 (W.D.N.Y. 2020) .................................................................12

*In re Almroth*,
  171 Misc. 314 (Sup. Ct. Albany Cnty. 1939) .......................................................33

*Ingram v. Wayne Cnty.*,
    81 F.4th 603 (6th Cir. 2023) ....................................................................25

*Iosilevich v. City of New York*,
    No. 21 CV 4717 (RPK)(LB), 2022 WL 19272855 (E.D.N.Y. Aug. 10, 2022) ......................13

*James McCreery and Co.*,
    Ex. O(5), 11 SLRB 59 (1948) ....................................................................34

*Janus v. Am. Fed'n of St., Cnty., & Mun. Emps.*,
    138 S. Ct. 2448 (2018) ....................................................................16

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ....................................................................31

*Kirk v. N.Y.S. Dep't of Educ.*,
    562 F. Supp. 2d 405 (W.D.N.Y. 2008) ....................................................................20

*Knick v. Twp. of Scott*,
    139 S. Ct. 2162 (2019) ....................................................................22

*Liteky v. United States*,
    510 U.S. 540 (1994) ....................................................................27

*Locurto v. Safir*,
    264 F.3d 154 (2d Cir. 2001) ....................................................................23

*Long Island Coll. Hosp.*,
    Ex. O(7), 34 SLRB 324 (1971) ....................................................................25

*Maine Forest Products Council v. Cormier*,
    51 F.4th 1 (1st Cir. 2022) ....................................................................22

*Metro. Taxicab Bd. of Trade v. City of New York*,
    615 F.3d 152 (2d Cir. 2010) ....................................................................12

*Moore v. Consol. Edison Co.*,
    409 F.3d 506 (2d Cir. 2005) ....................................................................12

*Mount St. Mary's Hospital v. Catherwood*,
    26 N.Y.2d 508 (1970) ....................................................................28-29

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018) ....................................................................13

*N.Y. C.L. Union v. Grandeau*,
  528 F.3d 122 (2d Cir. 2008)...................................................................17

*N.Y.S. Lab. Rels. Bd. v. Club Transp. Corp.*,
  275 A.D. 536 (2nd Dep't 1949) ...........................................................33

*N.Y.S. Lab. Rels. Bd. v. Elenberg*,
  80 N.Y.S.2d 616 (Sup. Ct. Bronx Cnty. 1948) ...................................33

*N.Y.S. Lab. Rels. Bd. v. Toffenetti Rest. Co.*,
  180 Misc. 327 (Sup. Ct. N.Y. Cnty. 1943) ..........................................33

*N.Y.S. Vegetable Growers Ass'n v. Cuomo ("Vegetable Growers I")*,
  474 F. Supp. 3d 572 (W.D.N.Y. 2020) ................................. 12, 17, 38-39

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003).............................................................................16

*New York ex rel. Schneiderman v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015).................................................................13

*New York v. U.S. Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020)...................................................................39

*Nike, Inc. v. Already, LLC*,
  663 F.3d 89 (2d Cir. 2011)...................................................................35

*NLRB v. Gissel Packing Co.*,
  395 U.S. 575 (1969)...............................................................................6

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)...................................................................14, 25, 30

*NLRB v. Semco Printing Ctr., Inc.*,
  721 F.2d 886 (2d Cir. 1983).................................................................25

*NLRB v. Va. Electric & Power Co.*,
  314 U.S. 469 (1941).............................................................................32

*NLRB v. Windham Cmty. Mem'l Hosp.*,
  577 F.2d 805 (2d Cir. 1978).................................................................35

*N.Y. Inst. for Educ. of Blind v. United Fed'n of Tchrs.' Comm. for N.Y. Inst. for Educ. of Blind*,
  83 A.D.2d 390, 403 (1st Dep't 1981) .....................................................7

*One Thousand Friends of Iowa v. Mineta*,
    250 F. Supp. 2d 1064 (S.D. Iowa 2002) ...................................................15

*Overstock.com, Inc. v. N.Y. St. Dept. of Taxation & Fin.*,
    20 N.Y.3d 586 (2013) ............................................................................. 31-32

*Paumanok Vineyards & Palmer Vineyards*,
    Ex. O(11), 55 PERB ¶ 3401, 2022 WL 4235050 (2022)........................6, 15, 35

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996).................................................................................19

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
    993 F.2d 800 (11th Cir. 1993) .................................................................15

*Rios v. Enterprise Ass'n Steamfitters Loc. Union 638 of U.A.*,
    860 F.2d 1168 (2d Cir. 1988)...................................................................20

*Rochester Drug Coop., Inc. v. Hiscox Ins. Co.*,
    466 F. Supp. 3d 337 (W.D.N.Y. 2020)......................................................38

*Singleton v. Wulff*,
    428 U.S. 106 (1976).................................................................................14

*Solid Waste Agency of Northern Cook Cnty. v. U.S. Army Corps of Eng'rs*,
    531 U.S. 159 (2001).................................................................................31

*St Agatha's Roman Cath. Church Soc'y & Diocesan Elementary Tchrs. Ass'n*,
    Ex. O(1), 50 SERB 145 (2001)................................................................15

*Stork Rest. v. Boland*,
    282 N.Y. 256 (1940)...............................................................................33

*Tooly v. Schwaller*,
    919 F.3d 165 (2d Cir. 2019).....................................................................25

*Trib. Co. v. Abiola*,
    66 F.3d 12 (2d Cir. 1995) ........................................................................19

*Truax v. Raich*,
    239 U.S. 33 (1915)..................................................................................14

*United States v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993)..................................................................................25

*United States v. Salerno*,
    481 U.S. 739 (1987)..............................................................................31

*Vanderveer v. Zoning Bd. of Appeals Town of E. Hampton*,
    No. 20-4252, 2021 WL 3745741 (2d Cir. Aug. 25, 2021) .....................26

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)...........................................................................31-32

*Weigner v. City of New York*,
    852 F.2d 646 (2d Cir. 1988)..................................................................24

*Wheatley v. N.Y.S. United Tchrs.*,
    80 F.4th 386 (2d Cir. 2023) ..................................................................16

*Withrow v. Larkin*,
    421 U.S. 35 (1975)................................................................................27

**Constitutions**

N.Y. Constitution
    Article I, § 17 .....................................................................................2-3

**Federal Statutes**

45 U.S.C.A.
    § 151a...................................................................................................30

29 U.S.C.
    § 152(3)..................................................................................................2
    § 158(a)(1) ...........................................................................................33
    § 158(c).................................................................................................32
    § 162.....................................................................................................36

**State Statutes**

N.Y. Civ. Serv. Law
    § 209................................................................................................4, 30

SERA, NY Labor Law §
    § 700.....................................................................................................2
    § 701..................................................................................................2-3
    §702......................................................................................................3
    §702-a ..................................................................................................3

§ 702-b ......................................................................................................... 3-4, 18
§ 703 ........................................................................................................................ 2
§ 704 ................................................................................................................. passim
§ 704-b ................................................................................................................... 4-5
§ 705 ................................................................................................................. passim
§ 707 ........................................................................................................................ 7
§ 709 ................................................................................................................... 35-36
§ 716 ...................................................................................................................... 28

## Federal Regulations

20 C.F.R.
§ 655.122 .............................................................................................................. 21

29 C.F.R.
§ 501.4 .................................................................................................................. 15

## State Rules

N.Y. Comp. Codes R. & Regs. tit. 12
§ 263.22(a)(2) .......................................................................................................... 5
§ 263.24(e) ............................................................................................................... 6
§ 263.28 ................................................................................................................... 6
§ 263.30 ................................................................................................................... 6
§ 263.67 ................................................................................................................... 7
§§ 263.80-263.97 .................................................................................................... 4

## Miscellaneous Authorities

Andrew N. Vollmer, *Accusers as Adjudicators in Agency Enforcement Proceedings*
52 Mich. J.L. Reform 103 (2018). ......................................................................... 27

*Senate Passes the Farm Laborers Fair Labor Practices Act*, N.Y. Senate,
https://www.nysenate.gov/newsroom/press-releases/2019/senate-passes-farm-laborers-fair-labor-practices-act ................................................................................. 3

U.S. Dep't Homeland Sec., *H-2A Temporary Agricultural Worker Program*,
https://www.dhs.gov/h-2a-temporary-agricultural-worker-program ......................... 7

U.S. Dep't Lab., *H-2A Temporary Agricultural Program: Program Overview* (last visited
Jan. 4, 2024), https://www.dol.gov/agencies/eta/foreign-labor/programs/h-2a ...................... 7

NLRB, *Representation Case Procedures*, https://www.nlrb.gov/about-nlrb/what-we-do/representation-case-procedures ..................................................................... 24

William A. Herbert, *Card Check Labor Certification: Lessons from New York*,
74 Alb. L. Rev. 93, 167 (2011), https://perb.ca.gov/state-mediation/representation-elections/card-check-recognition/ .............................................................................6

# I. PRELIMINARY STATEMENT

In 2019, after eight decades of farmworkers' exclusion from important labor law protections, the New York State Legislature, to cure a violation of the New York State Constitution, amended the State Employment Relations Act, New York Labor Law Article 20 ("SERA"), with the Farm Laborers' Fair Labor Practices Act ("FLFLPA"). N.Y. Lab. Law §§ 700-718. This historic legislation provided the mechanism needed to enforce farmworkers' constitutional right to collectively bargain. Plaintiffs (five farms where workers are organizing and an agricultural organization) seek a preliminary injunction on the basis of Claims I through IX of their Complaint, prohibiting enforcement of FLFLPA against any private agricultural employers or employees. Plaintiffs fail to show a likelihood of success on any of those claims and, therefore, are not entitled to a preliminary injunction.[1]

Indeed, Plaintiffs do not even have standing to bring many of the claims in the Complaint. Many of Plaintiffs' claims allege harm only to farmworkers. Yet, Plaintiffs do not allege the necessary close relationship that would allow them to pursue claims on farmworkers' behalf, nor do they allege any obstacle preventing farmworkers from pursuing claims on their own. Additionally, none of Plaintiffs' claims are ripe for review by this Court: Plaintiffs base their claims on speculation about future events that may never occur, and Plaintiffs have failed to exhaust their administrative and their state judicial review options. And, even if Plaintiffs' claims were ripe, Plaintiffs cannot establish a likelihood of success that either FLFLPA or the processes of the New York State Public Employment Relations Board ("PERB")[2] violate federal law.

---

[1] While Plaintiffs' Memorandum of Law nowhere discusses the remaining claims in the Complaint and does not purport to rely on those remaining claims for the preliminary injunction sought, as a precaution we explain here why those claims are also unlikely to succeed.

[2] PERB is the name of both the agency and its three-member board. Coleman Decl. ¶ 1. To avoid confusion, the agency is referred to as "PERB" and its board as the "Board."

Plaintiffs also fail to show an imminent threat of irreparable harm or that the public interest weighs in favor of an injunction. Accordingly, this Court should deny Plaintiffs' request for a preliminary injunction in its entirety.

## II. STATEMENT OF FACTS

### A. **Statutory Framework**

The New York State Constitution provides that "[e]mployees shall have the right to organize and to bargain collectively through representatives of their own choosing." N.Y. Const. art. I, § 17. SERA, originally enacted in 1937, similarly declares that "the public policy of the state [is] to encourage the practice and procedure of collective bargaining, and to protect employees in the exercise of full freedom of association, self-organization and designation of representatives of their own choosing." SERA § 700. SERA defines "employee" specifically to exclude several classes of workers, and until 2019 that exclusion extended to "individuals employed as farm laborers," SERA § 701(3)(a) (2019), amended by L. 2019, c. 105, §§ 3, 17. SERA was largely modeled after the federal National Labor Relations Act ("NLRA"), passed two years before the enactment of SERA, which likewise defines the term "employee" to exclude "any individual employed as an agricultural laborer." 29 U.S.C. § 152(3).

SERA provides the employees it covers with substantive and procedural rights similar to those provided by the NLRA. Under SERA, employees have the rights to "form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing," as well as "to engage in concerted activities[] for the purpose of collective bargaining or other mutual aid or protection." SERA § 703. SERA prohibits unfair labor practices ("ULPs"), such as interfering with employees' organizing activities, refusing to bargain collectively, and retaliating against employees for engaging in organizing activities. SERA § 704.

PERB is responsible for administering and implementing SERA,[3] including:
(1) determining questions of appropriate representation for private sector employees covered by SERA, (2) investigating and adjudicating ULP charges, and (3) providing mediation and coordinating arbitration services for the resolution of collective bargaining disputes. SERA §§ 702, 702-a, 704-709.[4]

In 2016, a farmworker sued New York State claiming that SERA's exclusion of farmworkers violated the N.Y. Constitution Article I, § 17. The New York Appellate Division agreed, holding that the right to organize and collectively bargain is a "fundamental right, and that any statute impairing this right must withstand strict scrutiny." *Hernandez v. State*, 173 A.D.3d 105,114 (3d Dep't 2019)*. The court found that SERA's farmworker exclusion did not withstand strict scrutiny and affirmed the fundamental right of farmworkers to organize and bargain collectively. *Id.*

FLFLPA was enacted in response to *Hernandez.*[5] FLFLPA amends the definition of "employee" to include "farm laborers." SERA § 701(3)(c). FLFLPA also contains specific provisions applicable only to farm laborers. FLFLPA prohibits farmworkers from striking. SERA § 704-b(1). To counterbalance the illegalization of strikes, FLFLPA provides for compulsory impasse arbitration, SERA § 702-b, a dispute-resolution method used in other

---

[3] Before 2010, the State Employment Relations Board, previously known as the State Labor Relations Board, administered SERA. In 2010, the Legislature abolished that body and transferred its functions to PERB. *See* L. 2010, c. 56, pt. O, § 6S.

[4] PERB has promulgated rules implementing FLFLPA. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 250.1-263.123 ("SERA Rules"). Full website information for this citation and similar ones hereinafter available in the Table of Authorities.

[5] *Senate Passes the Farm Laborers Fair Labor Practices Act*, N.Y. Senate (June 19, 2019) (last visited Jan. 4, 2024) (noting multiple hearings at which owners, farmworkers, advocates, and other stakeholders presented their views).

contexts where strikes are prohibited, such as public-sector employment and not-for-profit hospitals, *see* N.Y. Civ. Serv. Law § 209; N.Y. Lab. Law § 716.

Compulsory impasse arbitration is not automatic and cannot be initiated by the government. Conley Decl. ¶ 6. It has several steps: (i) if farmworkers and employers are unable to reach a collective bargaining agreement ("CBA"), a party may declare impasse; (ii) the PERB Director of Conciliation then must determine if an impasse exists; (iii) if such a determination is rendered, a party may seek review from the Board; (iv) if the Board confirms impasse, the parties must mediate and/or bargain for at least 30 days; (v) if no agreement is reached in mediation, a party may request arbitration; (vi) the parties then select an arbitrator from a list of private arbitrators generated by PERB; (vii) the selected arbitrator conducts an arbitral proceeding and issues a compulsory impasse arbitration award that must consider identified statutory factors;[6] and (viii) the award is subject to judicial confirmation. SERA § 702-b; SERA Rules §§ 263.80-263.97; Coleman Decl. ¶¶ 72-75; Conley Decl. ¶¶ 7-10, 13, 15, 17.

FLFLPA also provides that existing statutory ULPs apply to farm employers and creates new ULPs applicable only to farm employers. SERA §§ 704, 704-b. The new ULPs include lockouts and refusals to continue an expired agreement until a new one is negotiated. SERA § 704-b. FLFLPA also makes it a ULP for farm employers to "discourage union organization or . . . [other] protected concerted activity." SERA § 704-b(2)(c).[7] PERB has not yet issued a

---

[6] The arbitrator is required to consider several factors, including any factor stipulated by the parties; a comparison of the wages, hours, and conditions of employment with comparable agricultural employers; the financial ability of the agricultural employer to pay; and the impact on the food supply and commodity pricing. SERA § 702-b(3)(c)(iii); Coleman Decl. ¶ 75.

[7] While SERA § 704-b applies only to farm employers, SERA § 704(5) similarly makes it a ULP for any private-sector employer covered by SERA to "discourage membership in any labor organization, by discrimination in regard to hire or tenure or in any term or condition of employment." SERA § 704(5).

decision interpreting SERA § 704-b(2)(c) but has published guidance stating that "the First

Amendment likewise applies to SERA" and that SERA is "consistent with NLRA precedent"

such that "an employer's expression of opinion, under circumstances that make it clear that the

employer will neither penalize nor reward employees based on their protected activity, and which

makes clear that the employer will respect the rights of employees will most likely not constitute

a basis for a charge [under § 704-b]." Coleman Decl. ¶ 382; Exs. N(1, 5) [8]; Wirenius Decl. ¶ 50.

### B.  General PERB Procedures

Union certification by showing majority support through the use of dues deduction

authorization cards is known as "card check." Cards are considered the equivalent of a vote.

Coleman Decl. ¶ 401. Even before FLFLPA's enactment, card check was a permissible method

of gauging a union's level of support under SERA. FLFLPA simply made card check the default

method where "the choice available to the employees . . . is limited to selecting or rejecting a

single employee organization." SERA § 705(1-a). An employee organization will be certified

without an election if a majority of the employees within the unit has signed dues deduction

authorization cards. *Id.* If a union submits dues deduction authorization cards from over 30%

(but not more than 50%) of the number of employees in the proposed bargaining unit, an election

will be ordered. SERA Rules § 263.22(a)(2). The Board must also order an election under other

circumstances—for example, where there is clear and convincing evidence that authorization

cards were obtained through fraud or coercion. *See* SERA §§ 705(1), (3). Cards are valid for

certification purposes only if the workers are employed as of the payroll period preceding the

---

[8] Unless otherwise indicated, references to exhibits herein are to the PERB Appendix.

filing of the certification petition. *Id.*; *see also* SERA Rules § 263.24(e) (requiring employer to provide list of employees on payroll as of this date).[9]

PERB precedent recognizes "each employee's right" under FLFLPA "to choose to join a union or to refrain from joining one." *Paumanok Vineyards & Palmer Vineyards*, Ex. O(11)-7, 55 PERB ¶ 3401, 2022 WL 4235050 (2022). No agricultural employee has been required by the Board or any delegate thereof to be a member of a union or to pay union dues. Coleman Decl. ¶ 396. While SERA does not explicitly reference union decertification, such decertification is recognized by precedent that applies to FLFLPA. *Id.* ¶¶ 36, 351-355; Manichaikul Decl. ¶ 23; SERA § 705(3); SERA Rules § 263.30.

When a union seeks certification as an employee representative, Administrative Law Judges ("ALJs") act as fact-finders, ensuring the development of a full record for determinations. Coleman Decl. ¶ 49. Hearings are held when necessary to determine material disputed factual issues. *Id.* ¶¶ 46, 357-364. A party can appeal an ALJ's decision regarding certification by filing exceptions with the Board. SERA Rules § 263.28. A Board certification decision can later be challenged in state court under Article 78 of the New York Civil Practice Law and Rules ("CPLR"). *See* Coleman Decl. ¶ 15.

When a party files a ULP charge, that party—and not PERB—prosecutes the charge. PERB plays a neutral decision-making role, designating an ALJ to adjudicate ULP charges in the first instance. *Id.* ¶ 63; Manichaikul Decl. ¶ 20. A party can appeal an ALJ's decision by filing

---

[9] The Supreme Court and the NLRB both recognize card check as an appropriate method for assessing whether a union enjoys majority support. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969); *Cemex Construction Materials Pacific*, 372 NLRB No. 130 (2023). Card check is used in the public sector in several states. *See* William A. Herbert, *Card Check Labor Certification: Lessons from New York*, 74 Alb. L. Rev. 93, 167 (2011). In 2022, California began card check for agricultural workers. *See* AB 2183; *Card Check Recognition*, Cal. Pub. Emp. Rels. Bd. (last visited Jan. 4, 2024).

exceptions to the Board, SERA Rules § 263.67, and can also seek judicial review of final Board decisions, SERA § 707(4).

PERB lacks independent enforcement authority. Coleman Decl. ¶ 17; *N.Y. Inst. for Educ. of Blind v. United Fed'n of Tchrs.' Comm. for N.Y. Inst. for Educ. of Blind*, 83 A.D.2d 390, 403 (1st Dep't 1981) (noting Board orders are "not self-enforcing"). PERB must file a petition in state court to enforce its orders and obtain temporary or injunctive relief. SERA § 707(1).

### C. H-2A Program

The U.S. has a long history of allowing foreign workers to enter the country for the purpose of performing temporary agricultural work, including by working under CBAs. *See* Velasquez Decl. ¶ 4; Elenes Decl. ¶ 4. The current H-2A program "was instituted to meet [the] need for seasonal and temporary labor, without adding permanent residents to the population."[10] The H-2A program functions under a coordinated state and federal scheme that includes state workforce agencies and the U.S. Departments of State, Labor ("USDOL"), and Homeland Security. The process seeks to ensure that domestic workers are not adversely affected by the hiring of foreign workers and that workers in the program are protected from exploitation.[11]

Nothing in the H-2A statutes and regulations prohibits employers and foreign guestworkers from being subject to a CBA. *See* N.Y.S. Dept. of Labor's Foreign Labor Certification Unit ("FLCU") Decl. ¶ 26; Coleman Decl. ¶ 182, Ex. F(9)-3-4; Velasquez Decl. ¶ 9; Elenes Decl. ¶ 9. Any CBA covering H-2A workers must comply with the program regulations. Velasquez Decl. ¶ 10; Elenes Decl. ¶ 8. For example, recall rights that prioritize the

---

[10] U.S. Dep't of Homeland Sec., *H-2A Temporary Agricultural Worker Program* (last visited Jan. 4, 2024).

[11] U.S. Dep't of Lab., *H-2A Temporary Agricultural Program: Program Overview* (last visited Jan. 4, 2024).

rehiring of previous H-2A workers over the hiring of new H-2A workers do not violate the program regulations provided the hiring of the H-2A worker is properly approved by state and federal agencies. FLCU Decl. ¶¶ 10-31 (explaining steps of H-2A job order approval process).

From 2022 to 2023, around 986 H-2A workers in California and Oregon were covered by CBAs entered into by farm employers. From 2022 to 2023, in North Carolina, over 11,000 H-2A workers employed by the North Carolina Growers Association ("NCGA")—the largest employer of H-2A workers in the country—were covered by a CBA. Ex. F(2)-47-57; *see also* Velasquez Decl. ¶¶ 5, 12 (noting that Plaintiffs' counsel, Fisher and Phillips LLP, represents NCGA in its bargaining with these workers' union). NCGA grower members and the Farm Labor Organizing Committee ("FLOC") have a CBA in effect that provides for many of the terms to which Plaintiffs object, including dues deduction, arbitration procedure, and the provision to H-2A workers of a right to recall so long as the workers remain eligible for rehire. Velasquez Decl. ¶ 7. The CBA does not preclude employers from giving priority to domestic workers or declining to recall workers who do not obtain a visa. Velasquez Decl. Ex. 3 at 10, 14. Both FLOC and NCGA "recognize that the applicable H-2A statute and regulations grant certain preferential rights to U.S. workers, and they allow H-2A workers to be displaced because of the availability of U.S. workers." *Id.* Ex. 3 at 17.

   **D.  Factual History with Respect to Each Farm Plaintiff**

Each of the Plaintiff farms is involved in proceedings before PERB that are at different stages. Full details of those proceedings are provided in the Coleman Declaration, and records of those proceedings are contained in the PERB Appendix. A brief overview is provided here for the Court's convenience. All of the PERB proceedings involving Plaintiffs have been stayed in light of this litigation. Coleman Decl. ¶ 78; *see also* ECF No. 23 at 2.

**Crist Brothers Orchards ("Crist")**. In October 2022, the United Farmworkers ("UFW") filed a Petition for Certification to represent employees at Crist, including its H-2A workers. Ex. A(1). In an interim decision, an ALJ determined that the proposed bargaining unit should include "packing" workers and that because the UFW had not demonstrated sufficient support to be certified as the representative of that unit by card check, an election may be appropriate. Ex. A(44). Thereafter, an ALJ decided remaining issues, including that H-2A workers should be included in the bargaining unit and that an election was indeed warranted. Ex. A(58). Because an election is the only FLFLPA remedy for fraud or coercion, the ALJ's decision obviated the need to decide Crist's claims of fraud and coercion. *Id.*; Manichaikul Decl. ¶ 19. The election has not yet been held. The UFW filed a ULP charge against Crist alleging that supervisors coerced workers into signing an anti-union petition by saying that "those that do not support the company will have a hard time returning." Ex. A(25)-4-5.

**Porpiglia Farms ("Porpiglia"), A&J Kirby Farms ("Kirby"), and Lynn-Ette & Sons ("Lynn-Ette").** The PERB proceedings involving Porpiglia, Kirby, and Lynn-Ette are all in a similar procedural posture. In all three proceedings, an ALJ certified the UFW as an employee representative based on its showing of majority support through dues deduction authorization cards. Exs. B(35), C(35), D(27). Each of the farms appealed the ALJ's decision to the Board, arguing that (1) H-2A workers were improperly included in the bargaining unit, (2) FLFLPA is preempted by federal law, and/or (3) the farm was entitled to an evidentiary hearing on its claim that the union engaged in fraud and coercion in soliciting dues deductions authorization cards. Exs. B(37), C(39), D(31). The farms also moved to stay the certifications pending appeal. The motions were denied. The farms did not appeal those denials. Coleman Decl. ¶ 77. PERB consolidated the three farms' appeals of the certification decisions and stayed them in light of

this litigation. Ex. J(1); ECF No. 23 at 2. In all three proceedings, the UFW filed a Declaration of Impasse, and PERB's Director of Conciliation determined that the parties were at an impasse. Exs. B(41, 45), C(43, 48), D(33, 37); Conley Decl. ¶ 11. None of the farms appealed this determination to the Board, although they could have. Coleman Decl. ¶ 177; Conley Decl. ¶ 11.

The UFW also filed various ULPs against each of Porpiglia, Kirby, and Lynn-Ette. None of those charges has been decided by an ALJ, much less addressed in an appeal to the Board. Coleman Decl. ¶ 314; Manichaikul Decl. ¶ 20. The charges allege the following ULPs by one or more of the farms: (1) threatening to not recall employees who refused to sign an anti-union petition, (2) discouraging union activity by refusing to recall workers who engaged in union activity, (3) bargaining in bad faith or refusing to bargain, and (4) threatening to arrest union organizers who visited employees at their residence on the farms. Exs. B(7, 18, 39, 48, 50) (Porpiglia), C(8, 25, 41) (Kirby), D(9, 20, 39) (Lynn-Ette).

**Cahoon Farms ("Cahoon")**. The UFW filed a Petition for Certification to represent all agricultural workers at Cahoon. Ex. E(1). Cahoon responded to the petition by filing only a list of employees with payroll and H-2A records, with no offer of proof or other challenge to representation, despite follow-up from PERB. Exs. E(4-8). The Board certified the UFW without an election because the union had demonstrated majority support through dues deduction authorization cards.[12] Exs. E(9, 10). Cahoon did not appeal the certification, but later filed a Petition for Unit Clarification, Ex. E(21), arguing that the bargaining unit should be limited to H-2A workers. The ALJ found that the certification order was clear on its face and did not require further clarification and that the arguments raised by Cahoon in the motion should have

---

[12] Before the SERA Rules were amended to reflect FLFLPA, certification decisions were made by the Board, not an ALJ. Coleman Decl. ¶ 291. The decision certifying the UFW as the representative of Cahoon employees was issued before those amendments took effect.

been raised either in the certification proceeding or on appeal from the certification order. Ex. E(34). Cahoon did not appeal this decision to the Board. Coleman Decl. ¶ 313. After the UFW filed a Declaration of Impasse, PERB's Director of Conciliation determined that the parties were at an impasse. Exs. E(11, 17); Conley Decl. ¶ 12. Cahoon did not appeal the impasse determination to the Board. Coleman Decl. ¶ 300; Conley Decl. ¶ 12. The UFW filed ULP charges against Cahoon for refusing to bargain, bargaining in bad faith, retaliation for engaging in union activity, and unilateral changes in working conditions. Exs. E(12, 22-24, 38).

### E. Sarah Coleman's Role at PERB

Defendant Coleman has been PERB's Deputy Chair since November 2016. Coleman Decl. ¶ 19. In that role, she acts on authority delegated by the Board and her primary duties include "reviewing the decisions of PERB delegates and drafting proposed Board decisions for review by the Board." *Id.* ¶ 21. She also "advises the PERB Chair and the Board with respect to possible amendments to the Board's Rules of Procedure in both the public and private sector," and was involved in revising the SERA Rules after FLFLPA was enacted. *Id.* ¶ 22.

From June 2, 2022, to July 7, 2023, Coleman served as Acting Director of PERB's Office of Private Employment Practices and Representation ("PEPR"). *Id.* ¶ 25. As Acting Director of PEPR, Coleman processed certification petitions and ULP charges. *Id.* ¶ 26. Directors also regularly act as ALJs (also called Hearing Officers) and conduct factfinding in SERA matters. *Id.* ¶ 28. Coleman wrote decisions relating to Crist, Porpiglia, Kirby, and Lynn-Ette; she also presided over the proceeding involving Cahoon but did not issue a decision. *Id.* ¶ 29. Coleman has not participated in "any review of any ruling [she] issued as PEPR Acting Director, including the Plaintiffs, and will be recused from doing so in the future." *Id.* ¶¶ 27, 30.

11

### III. ARGUMENT

**A.  Legal Standard for Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "When, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (internal citations omitted); *N.Y.S. Vegetable Growers Ass'n v. Cuomo ("Vegetable Growers I")*, 474 F. Supp. 3d 572, 578 (W.D.N.Y. 2020).

The more lenient standard of "sufficiently serious questions going to the merits" cited by Plaintiffs does not apply here because Plaintiffs challenge government action—enforcement of the FLFLPA. *See Cent. Rabbinical Cong. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 192 (2d Cir. 2014). Contrary to Plaintiffs' argument, (Pl.'s Br. Supp. Mot. TRO and Injunctive Relief ("Br."), ECF No. 2-1 at 8), this Court declined to apply this more lenient standard in *Christian v. Nigrelli*, instead applying the "likelihood of success" standard to claims seeking to enjoin the State's enforcement of the statutory scheme governing the possession of firearms on private property. 642 F. Supp. 3d 393, 403 (W.D.N.Y. 2022); *see also Hund v. Cuomo*, 501 F. Supp. 3d 185, 207 (W.D.N.Y. 2020) (applying likelihood of success standard to state enforcement of COVID-19 restrictions). Indeed, where, as here, the requested injunction would alter the status quo operation of a law, a "heightened" standard applies, requiring a "clear"

12

or "substantial" likelihood of success on the merits. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *Frey v. Nigrelli*, 661 F. Supp. 3d 176 (S.D.N.Y. 2023).

Additionally, Plaintiffs must show irreparable harm and that a preliminary injunction will serve the public interest. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Because Plaintiffs seek to change the status quo operation of FLFLPA, they must make a "strong showing" of irreparable harm. *New York ex rel. Schneiderman*, 787 F.3d at 650.

Plaintiffs cannot satisfy any of these requirements.

### B.  Plaintiffs Fail to Show That Their Claims Are Likely to Succeed on the Merits

### 1.  Plaintiffs Lack Standing to Bring Claims on Behalf of Farmworkers and Cannot In Any Event Show a Likelihood of Success on Those Claims (Counts V, VII, VIII, IX, and X)

Plaintiffs seek to assert multiple claims on behalf of farmworkers, including Count V: FLFLPA's compulsory impasse arbitration provision infringes on farmworkers' liberty and property interests (Compl. ¶¶ 323, 329); Count VII: FLFLPA's paycheck dues deductions provision infringes on farmworkers' freedom of association rights (Compl. ¶¶ 363, 365); Count VIII: PERB's alleged lack of a union decertification process infringes on farmworkers' freedom of association rights (Compl. ¶ 375); Count IX: FLFLPA's compulsory impasse arbitration provision infringes on farmworkers' equal protection rights by treating them differently from other private employees (Compl. ¶ 387); and Count X: FLFLPA's requirement that agricultural employers collectively bargain impairs farmworkers' contractual rights (Compl. ¶ 402).

Plaintiffs cannot establish a likelihood of success on these claims because they lack standing to bring them. "The general rule is that a plaintiff lacks standing to assert the rights of another in federal court." *Iosilevich v. City of New York*, No. 21 CV 4717 (RPK)(LB), 2022 WL 19272855, at *8 (E.D.N.Y. Aug. 10, 2022); *see also City of Buffalo v. N.Y.S. Dep't of Env't*

13

*Conservation*, No. 04-CV-0693E(Sc), 2007 WL 9777732, at *2 (W.D.N.Y. Sept. 21, 2007)

(same). A narrow exception applies if, among other things, each of two requirements is met:

(1) the relationship between the plaintiff and third party is such that the plaintiff is nearly as

effective a proponent of the third party's rights as is the third party, and (2) an obstacle exists to

the third party asserting their own rights. *See Singleton v. Wulff*, 428 U.S. 106, 113-16 (1976)

(finding doctors had standing to challenge statute restricting Medicaid payments for their

patients). Plaintiffs satisfy neither requirement here.

      Plaintiffs fail to establish that they are a proponent of their farmworkers' rights, let alone

nearly as effective a proponent as the farmworkers themselves. Unlike the relationship between

the doctor plaintiffs and their patients in *Singleton*, the relationship between the Plaintiffs and

farmworkers does not reflect a strong identity of interests. Indeed, the history of the labor

movement demonstrates the opposite—that employers' interests are not aligned with those of

their employees. In *NLRB v. Jones & Laughlin Steel Corp*, cited by Plaintiffs, (Br. at 13), the

Supreme Court recognized that workers engage in collective action precisely to "safeguard their

own proper interests" as distinct from—and often antagonistic to—those of their employers. 301

U.S. 1, 33-34 (1937). Plaintiffs allege no facts suggesting this assessment is incorrect.[13]

      Plaintiffs also fail to establish any obstacles preventing farmworkers from asserting their

own rights. Indeed, H-2A workers have brought claims challenging policies that affect their

employment. *See, e.g., Garcia v. Stewart*, 531 F. Supp. 3d 194, 205 (D.D.C. 2021) (citing *Save

Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 509 (D.C. Cir. 2019) (challenging USDOL

---

[13] Neither of the two cases Plaintiffs cite, (Compl. ¶ 351), supports their claim that they have standing to sue on behalf of farmworkers. In *Truax v. Raich*, 239 U.S. 33, 38-39 (1915), an employee brought a claim *on his own behalf* challenging a state law that would have resulted in the loss of his job. And in *Charles Wolff Packing Co. v. Ct. of Indus. Rels.*, 262 U.S. 522, 524-25 (1923), a claim on behalf of workers was filed by a union, not by an employer.

policy on wages)); *see also* 29 C.F.R. § 501.4 (authorizing H-2A workers to file charges against their employer, recruiter, or labor contractor).

Courts have repeatedly rejected similar efforts by employers to bring claims on their workers' behalf, both because the employer-employee relationship does not involve the strong identity of interest necessary for third-party standing and because, as here, nothing prevented the workers from bringing their own claims. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 803, 809-10 (11th Cir. 1993) (timber companies lacked standing to challenge environmental law on workers' behalf); *One Thousand Friends of Iowa v. Mineta*, 250 F. Supp. 2d 1064, 1068 (S.D. Iowa 2002) (mall lacked standing to challenge construction based on workers' health interests).

Thus, even if the claims Plaintiffs allege on behalf of farmworkers had merit (which they do not, *see infra*), Plaintiffs lack standing to bring them. Plaintiffs' claims on behalf of farmworkers are also unlikely to succeed on the merits for the same reasons that the same claims asserted on Plaintiffs' own behalf are unlikely to succeed. The aspects of the FLFLPA regime Plaintiffs challenge—including FLFLPA's compulsory impasse arbitration regime and its card-check method for certifying a union—are fully consonant with the federal constitution and the federal H-2A program, as explained in further detail below. And any remaining claims Plaintiffs raise only on behalf of farmworkers are premised on a demonstrably false understanding of New York's collective-bargaining scheme. Contrary to Plaintiffs' repeated assertion, for example, PERB has expressly acknowledged the right of employees both to choose *not* to join a union, *see, e.g.*, *Paumanok*, Ex. O(11)-7, 2022 WL 4235050, and to decertify a union they no longer support, *see, e.g.*, *St Agatha's Roman Cath. Church Soc'y & Diocesan Elementary Tchrs. Ass'n*, Ex. O(1), 50 SERB 145 (2001); *see also* Coleman Decl. ¶¶ 36, 351-355 (collecting cases). Nor

does anything in the FLFLPA scheme require that union fees be deducted from workers' wages. Plaintiffs' reliance on *Janus v. Am. Fed'n of St., Cnty., & Mun. Emps.*, 138 S. Ct. 2448 (2018), which invalidated a collective bargaining scheme mandating the deduction of union dues from state employees' wages, is therefore misplaced. *Janus* is inapposite for the additional reason that its reasoning and holding were expressly limited to public-sector employment, which is not at issue here. *See e.g., id.* at 2480; *see also Wheatley v. N.Y.S. United Tchrs.*, 80 F.4th 386, 388, 390-91 (2d Cir. 2023) (explaining *Janus* was expressly limited to the public-sector context).[14]

**2. Plaintiffs' Claims Are Not Ripe**

Plaintiffs are also unlikely to succeed on the merits of their claims because their challenges are not ripe for judicial review. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). A central purpose of this doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 148 (1967). That concern is especially implicated where, as here, a plaintiff asks for what may be an unnecessary determination of constitutional law. *See Fed. Election Comm'n v. Cent. Long Island Reform Immediately Comm.*, 616 F.2d 45, 51-52 (2d Cir. 1980).

---

[14] Plaintiffs argue that *Janus* should be extended to the private-sector here because FLFLPA allows a card-check system and provides for compulsory impasse arbitration. (Br. at 16-17.) Those features of FLFPLA are not sufficient, however, to enable private-sector workers to bring a First Amendment claim. More fundamentally, though, only workers—not employers—have standing to assert a claim based on *Janus*. And even asserted by workers, the claim Plaintiffs suggest would not be ripe unless and until a contract requiring the deduction of union fees were imposed via compulsory arbitration—a contingency that remains entirely speculative at this stage, *see infra*.

To establish constitutional ripeness, a plaintiff's claimed injury must be actual or imminent. *Vegetable Growers I*, 474 F. Supp. 3d at 580. When determining whether to abstain based on prudential ripeness, courts must evaluate the fitness of the issues for decision and the hardship to the parties if no decision is issued. *Id.* at 580-81. Plaintiffs cannot satisfy the fitness analysis where "the issues sought to be adjudicated are contingent on future events or may never occur," *N.Y. C.L. Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008), or where the agency responsible for administering a challenged regulatory scheme "has yet to adjudicate a concrete inquiry into" the claims raised, *Vegetable Growers I*, 474 F. Supp. 3d at 580-81.

Plaintiffs' claims are not ripe under these standards. Most of Plaintiffs' claims are predicated on speculation about future events that may never occur. For example, Plaintiffs' claim of conflict preemption is based on their supposed obligation to recall H-2A workers, which they claim conflicts with the rules of the H-2A program. But nothing in FLFLPA obliges Plaintiffs to recall H-2A workers. The only source Plaintiffs cite for this supposed obligation is a contract term proposed by the farmworkers' union during ongoing negotiations of a CBA. (Br. at 5.) But the mere proposal of a contract term by a private party does not give rise to a constitutional claim. And the prospect that such a term may be imposed following compulsory impasse arbitration, as Plaintiffs suggest, is entirely speculative at this stage.[15] Indeed, it remains uncertain whether Plaintiffs will even be required to participate in compulsory impasse arbitration: at this point neither the Plaintiff farms nor the union have requested arbitration. *See*

---

[15] The claim that Plaintiffs purport to assert on farmworkers' behalf challenging the deduction of union dues from their wages, (Compl. ¶¶ 363, 365), is unripe for the same reason: the only source Plaintiffs cite for the proposition that Plaintiffs will be required to deduct dues from farmworkers' wages is a term in a proposed CBA that Plaintiffs remain free to reject. (Br. at 5.)

SERA § 702-b(c); Conley Decl. ¶¶ 7-17. And any feared future hypothetical contract term would be enforceable only if it survived judicial review.

Prudential ripeness likewise precludes the Court from inserting itself into ongoing administrative proceedings involving the very issues raised in Plaintiffs' Complaint. Some of those issues—such as the federal preemption issue and the challenge to the union's certification via card-check—are now pending before the Board, on appeal from ALJ decisions. Other issues have not yet been addressed by PERB at any level of administrative review, such as Plaintiffs' claim that the restriction on discouraging union activity in FLFLPA § 704-b(2)(c) violates their First Amendment rights. The farmworkers' union has filed ULP charges asserting violations of this provision by some of the Plaintiffs, but those charges remain pending before an ALJ. *See supra* Part II.D. The manner in which the ALJ and, if an appeal is taken, the Board decide those charges may well obviate the constitutional issues presented here. This is particularly true given PERB's express guidance that it will interpret FLFLPA § 704-b(2)(c) in a manner that comports with employers' First Amendment rights. Exs. N(1, 3); Wirenius Decl. ¶ 50. The Court should refrain from wading into a constitutional debate that could be rendered academic by PERB's administrative proceedings (which have been stayed pending this litigation). The fact that PERB must seek a state-court order to enforce its rulings—coupled with the availability of state-court review of those rulings—further undermines the ripeness of Plaintiffs' claims. New York's courts should have an opportunity to construe the state regulatory provisions at issue here before the federal courts resolve hypothetical constitutional questions raised by those provisions.[16]

---

[16] PERB has issued only two decisions in which any Plaintiff is a party, and neither deals with any issue raised in this case. Coleman Decl. ¶¶ 130, 292, 317-319; Exs. A(49), E(10). Indeed, PERB has issued only four decisions applying FLFLPA to any party. To the extent those decisions touch on the issues presented here, they undermine rather than support Plaintiffs' claims. For example, those decisions confirm that employees have a right to refrain from joining

Various abstention doctrines likewise instruct courts to refrain from interfering with ongoing administrative proceedings on difficult questions of state law involving matters of substantial public importance, such as those implicated by FLFLPA. *See Trib. Co. v. Abiola*, 66 F.3d 12, 15 (2d Cir. 1995) (discussing so-called *Burford* abstention); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716-18 (1996) (discussing other related abstention doctrines, including those articulated in *Colorado River* and *Pullman*).

### 3. FLFLPA Is Not Preempted by Federal Law and Does Not Violate the Contracts Clause (Counts I and X)

Plaintiffs are unlikely to succeed on their claim that federal law preempts FLFLPA. Courts apply a presumption against preemption that stems from "respect for the States as independent sovereigns in our federal system." *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 554 (W.D.N.Y. 2018) (internal citations omitted). To overcome the presumption, a party must meet the "heavy burden" of showing "that the conflict between the federal and state laws is so direct and positive that the two . . . cannot be reconciled or consistently stand together." *Id*. (quotation marks omitted). The presumption against preemption "is especially strong in areas where states traditionally wield police powers." *Id.* This strong form of the presumption applies here because states "have traditionally possessed broad authority under their police powers to regulate the employment relationship." *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 85 (2d Cir. 2015) (quotation marks omitted).

There are generally three types of preemption: "(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, 'where Congress has legislated so

---

a union; that workers can petition to decertify a union; and that a hearing is required only when there is a material issue of disputed fact, the same standard used by the NLRB. Coleman Decl. ¶¶ 62, 335-336, 365-367.

comprehensively that federal law occupies an entire field of regulation and leaves no room for state law'; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Crout v. Haverfield Int'l, Inc.*, 269 F. Supp. 3d 90, 95 (W.D.N.Y. 2017) (internal citations omitted). None of these forms of preemption applies here.

First, Plaintiffs cite no authority for the argument that Congress expressly preempted a state law like FLFLPA. And the primary federal agency charged with enforcing the H-2A program, USDOL, has taken the position that "the H-2A requirements do not preempt Federal, State, or local laws protecting concerted activity and collective bargaining" and that the H-2A statutes contemplate collective bargaining agreements. Ex. F(9)-3-4.

Second, Plaintiffs are unlikely to establish field preemption. Field preemption exists where Congress has regulated so comprehensively that there is no room for state law. *See Crout*, 269 F. Supp. 3d at 95. The Immigration and Nationality Act, however, is only peripherally concerned with the employment of noncitizens. *Rios v. Enterprise Ass'n Steamfitters Loc. Union 638 of U.A.*, 860 F.2d 1168, 1172 (2d Cir. 1988). And the employment relationship is within traditional state police powers. *Concerned Home Care Providers*, 783 F.3d at 85; *see also Ass'n of Car Wash Owners Inc. v. City of New Yor*k, 911 F.3d 74, 82 (2d Cir. 2018). Furthermore, the Supreme Court "has never held that every state enactment which in any way deals with noncitizens is a regulation of immigration and thus per se pre-empted by Congress's constitutional power, whether latent or exercised." *Kirk v. N.Y.S. Dep't of Educ.*, 562 F. Supp. 2d 405, 413 (W.D.N.Y. 2008) (brackets omitted) (quoting *De Canas v. Bica*, 424 U.S. 351, 355 (1976)).

The H-2A program requires that workers enrolled in the program receive certain "*[m]inimum* benefits, wages, and working conditions" along with other basic protections, such as accessible housing and workers' compensation. 20 C.F.R. § 655.122 (emphasis added). The federal scheme thus sets a floor, not a ceiling. Nothing in the scheme precludes state and local governments from protecting H-2A workers' ability to bargain for benefits that exceed the federal minimum. FLFLPA, like other SERA provisions, provides this protection to *all* workers in New York, domestic and foreign. For foreign workers, FLFLPA, USDOL regulations, and the relevant H-2A immigration regulations constitute coordinated state and federal efforts that exist "within a complementary administrative framework . . . in the pursuit of common purposes." *Coal. for Competitive Elec. v. Zibelman*, 906 F.3d 41, 50 (2d Cir. 2018) (quoting *N.Y.S. Dept. of Soc. Servs. v. Dublino*, 413 U.S. 405, 521 (1973)) (rejecting preemption claim on this basis).

Third, Plaintiffs are unlikely to establish conflict preemption. Plaintiffs fail to plead any facts that would make it impossible for them to comply with FLFLPA and the H-2A statutes and regulations. Plaintiffs rely solely on feared hypothetical future events, pointing to bargaining proposals for contracts that they have not entered into, (*e.g.*, Compl. ¶ 265), ULP charges that have not been adjudicated, (*e.g.*, Compl. ¶ 122), and proposals for legislative and regulatory reform, (*e.g.*, Compl. ¶¶ 87-88). FLFLPA simply does not require Plaintiffs to do anything in conflict with the H-2A program. Plaintiffs have not identified any instance of an employer being sanctioned for collectively bargaining with H-2A workers. PERB also cannot compel an employer to undertake any act in contravention of the H-2A program. While Plaintiffs claim that the union has filed as-yet-undecided ULP charges for failing to recall H-2A workers who would not have been eligible to work in the United States, (Compl. ¶ 264), nothing in FLFLPA requires Plaintiffs to rehire such workers. Rather, FLFLPA prohibits Plaintiffs from retaliating against

workers, domestic or foreign, for engaging in union activity. *See* SERA §§ 704(5), 704-b(2)(c).

An employer does not violate this provision, however, by declining to recall an employee on the

basis that federal law prohibits it from doing so.

Plaintiffs mistakenly rely on *Maine Forest Products Council v. Cormier*, 51 F.4th 1 (1st

Cir. 2022), to support their conflict preemption argument. At issue there was a Maine law that

prohibited logging employers from "hiring anyone 'who is not a resident of the United States.'"

*Id.* at 3. The First Circuit found that the state law was preempted because it conflicted with the

H-2A program's clear and manifest objectives "that agricultural employers who cannot find

qualified U.S. workers should be able to hire foreign laborers when specified criteria are

satisfied." *Id.* at 9. FLFLPA does not conflict with the H-2A program's objectives; it neither

prevents employers from hiring H-2A workers, nor requires employers to hire such workers.

Plaintiffs are thus unlikely to succeed on any theory of preemption. To the extent they

base their arguments on the Supremacy Clause, that claim fails for the additional reason that this

clause is "not the source of any federal rights," *Armstrong v. Exceptional Child Ctr., Inc.*, 575

U.S. 320, 324-25 (2015) (quotation marks omitted), and thus does not support a cause of action,

even asserted through § 1983, *see Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (§ 1983

allows parties to assert a "violation of a federal right," not simply a violation of federal law).

Although Plaintiffs' brief does not purport to rely on their Contracts Clause claim (Count

X), that claim fails for the same basic reasons that the preemption claim fails.[17] Plaintiffs identify

no existing contractual obligations endangered by FLFLPA. Instead, they speculate about the

---

[17] Plaintiffs do not rely on their Takings Clause claim, (Compl. ¶¶ 405-411), in seeking
preliminary relief. In any event, the equitable relief Plaintiffs seek is not available to them under
such a claim. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2173 (2019). Plaintiffs incorrectly rely
on *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), which did not address the appropriate
remedy for a Takings Clause claim.

hypothetical impact of future CBAs on future H-2A contracts. As explained above, however, there is no credible basis to claim that a compulsory interest arbitration award would impose any terms or conditions that violate the H-2A program. Thus, Plaintiffs are unlikely to succeed on their claim that FLFLPA infringes on their existing contractual obligations.

### 4. PERB's Proceedings Provide Adequate Process (Counts II and III)

Plaintiffs are unlikely to succeed on their claims that they have been denied due process in proceedings before PERB that remain pending with respect to (1) the notice PERB provided to Plaintiffs concerning the union's petitions for certification, (Compl. ¶ 277); (2) the timeframe in which Plaintiffs were required to respond to the petitions, (Compl. ¶ 279); (3) the ALJ's decision not to hold an evidentiary hearing on Plaintiffs' claims of fraud and coercion against the union, (Compl. ¶ 284); (4) the alleged lack of opportunity to cross-examine witnesses, (Compl. ¶ 274); and (5) the alleged bias in PERB's staffing practices and administrative structure, (Compl. ¶¶ 294-307). PERB's procedures as to each of these issues are compliant with due process. Plaintiffs have ample opportunity to raise these claims in the proceedings themselves, on administrative review, and thereafter in judicial proceedings under CPLR Article 78, all part of the process provided to them. It is well settled that an Article 78 proceeding, on its own, "constitutes a wholly adequate post-deprivation hearing for due process purposes." *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001). To the extent Plaintiffs argue they nonetheless have received inadequate pre-deprivation process, they are mistaken, as discussed below.

**Notice.** Due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Ford v. Shalala*, 87 F. Supp. 2d 163, 176 (E.D.N.Y. 1999), *judgment entered sub nom.*, *Ford v. Apfel*, No. CV-94-2736 (CPS), 2000 WL 281888

(E.D.N.Y. Jan. 13, 2000). PERB's notice was reasonably calculated to inform Plaintiffs that a certification proceeding was pending and that they had an opportunity to respond, as well as to provide the requirements for that response. It informed Plaintiffs that a petition had been filed and attached the petition. *See* Exs. A(2), B(2), C(2), D(2), E(2). The notice also directed Plaintiffs to PERB's website to find the applicable rules, and the notice listed the documents Plaintiffs were required to file in response to the petition, as well as the deadline for their response. *See id.*[18] The notice thus satisfied due process requirements. *See Brody v. Vill. of Port Chester*, 434 F.3d 121, 132 (2d Cir. 2005). PERB's service of the petitions and notices of petition by certified mail also comported with due process. *See Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir. 1988).

**Response time.** PERB's requirement that responses to the petition for certification be submitted within eight calendar days is also sufficient and in line with timelines in NLRB representation proceedings. NLRB responses to petitions are due within seven calendar days.[19][20] Further, in *Goldberg v. Kelly*, on which Plaintiffs rely, the Supreme Court said it was "not prepared to say that the seven-day notice" provided in that case was "constitutionally insufficient per se." 397 U.S. 254, 268 (1970) (emphasis added). Additionally, Plaintiffs Crist and Porpiglia requested and were granted extensions of this deadline. *See* Exs. A(4), B(4).

---

[18] There is no support for Plaintiffs' claim that PERB's staff ignores inquiries from employers. (Compl. ¶ 278.) On the contrary, the record shows that PERB responded to the inquiries made by Plaintiffs' counsel, Ex. I(8), and with respect to Cahoon, PERB inquired whether Cahoon would be submitting any further response to the certification petition, Ex. E(47).

[19] *See* NLRB, *Representation Case Procedures* (last visited Jan. 4, 2024).

[20] Plaintiffs also claim, (Compl. ¶¶ 279-281), that PERB's rules are too burdensome insofar as they require employers to submit a statement of position, offer of proof, and a list of workers as part of their response to a certification petition. PERB's federal counterpart, the NLRB, requires employers to submit documentation similar to what PERB requires in less time. *See* NLRB, *Representation Case Procedures*, *supra* note 19.

**Evidentiary hearing.** Plaintiffs allege that their due process rights were violated because the ALJ did not hold an evidentiary hearing on claims by Plaintiffs Kirby and Porpiglia that the union engaged in fraud and coercion in obtaining dues authorization cards. (Compl. ¶ 284.) Due process does not require a formal evidentiary hearing every time a party requests it, however, but rather requires "access to a tribunal in which the merits of the deprivation may be fairly challenged." *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 151-52 (2d Cir. 2010).[21] PERB unquestionably provided such access. Plaintiffs had ample opportunity to make their case on fraud and coercion by filing statements of position, offers of proof, affidavits, statements from workers, and legal briefs. *See, e.g.*, Exs. A(7), B(5, 17). The ALJs ultimately concluded that evidentiary hearings were not warranted, in Kirby's case because the allegations, even if true, did not state a claim sufficient to satisfy SERA's standard for establishing fraud and coercion, Ex. C(35)-25, and in Porpiglia's case because the evidence proffered failed to raise a material issue of fact, Ex. B(34)-18. The ALJs decisions were thus akin to judicial decisions dismissing a cause of action on the pleadings or at summary judgment, routine practices that comport with due process.[22]

---

[21] Plaintiffs' cases confirm that due process does not require a formal evidentiary hearing for every claimed deprivation, but rather a "meaningful opportunity to be heard," *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62 (1993), "some form of hearing," *Ingram v. Wayne Cnty.*, 81 F.4th 603, 613 (6th Cir. 2023), or an opportunity to "meet the charge" asserted, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937).

[22] To the extent Plaintiffs base their due process claim on an interpretation of FLFLPA § 705(3) that would require PERB to conduct an evidentiary hearing anytime a party raises a claim of fraud and coercion, it is well settled that state-law procedural requirements cannot give rise to a federal due process claim. *See Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019). In any event, PERB's interpretation of § 705(3)—as contemplating an evidentiary hearing only when there are material issues of fact—accords with longstanding SERA precedent, *see, e.g.*, *Long Island Coll. Hosp.*, Ex. O(7), 34 SLRB 324, 327 (1971), as well as federal and state labor practices, *see NLRB v. Semco Printing Ctr., Inc.*, 721 F.2d 886, 890-91 (2d Cir. 1983) (same standard applied by NLRB); Coleman Decl. ¶ 360 (discussing other state and municipal labor

**Cross-examination.** Plaintiffs' claim that the ALJ deprived them of the opportunity to cross-examine witnesses, (*see* Compl. ¶ 274), similarly fails. The ALJ's decision was not based on a resolution of disputed factual issues—much less on a determination of witness credibility—but rather on an application of the statutory standard to the facts alleged by Plaintiffs. Because the ALJ "did not rely on a credibility determination," cross-examination would not have affected the outcome and was therefore not required under the Due Process Clause. *Vanderveer v. Zoning Bd. of Appeals Town of E. Hampton*, No. 20-4252, 2021 WL 3745741, at *2 (2d Cir. Aug. 25, 2021).

**PERB's structure.** Plaintiffs claim that PERB's "inherent operational structure" violates due process. (Compl. ¶¶ 294-308.) This claim is based on a profound misunderstanding of PERB's structure and staffing practices. To begin, unlike in the case Plaintiffs cite, ALJs do not concurrently play "accusatory, advocacy, and adjudicative roles." *Horne v. Polk*, 242 Ariz. 226, 233 (2017). Rather, they play only the last of these three roles: that of purely neutral decisionmaker. In the unusual arrangement at issue in *Horne*, the same individual decided whether to bring charges in the first instance, advocated for those charges before a factfinder, and then reviewed the determination of that factfinder. *Id.* at 232. PERB's ALJs, in contrast, simply adjudicate charges initiated and prosecuted by private parties—here, the farmworkers' union.[23] PERB's structure is thus far *more* insulated from bias than that of many administrative agencies in which the same individual or group of individuals is tasked with both deciding whether to bring charges in the first instance and also adjudicating those charges—a practice that

---

agencies that apply this standard). Further, § 705(3) requires that PERB provide "for an appropriate hearing," not a formal evidentiary hearing.

[23] Unlike in the other case Plaintiffs cite, *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973), PERB's ALJs do not have a pecuniary interest in the proceedings.

has long been considered permissible under the Due Process Clause, absent specific evidence rebutting the "presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *see also* Andrew N. Vollmer, *Accusers as Adjudicators in Agency Enforcement Proceedings*, 52 Mich. J.L. Reform 103, 105 & n.5 (2018).

Plaintiffs' allegations concerning the roles played by Defendant Coleman likewise do not support a due process violation. For a period of time, Coleman served in three capacities at PERB: (1) as an ALJ, deciding certification and ULP matters in the first instance; (2) as Deputy Chair of the Board, participating in setting PERB's procedural rules and hearing appeals from ALJ decisions other than her own (from which she was and remains recused, *see* Coleman Decl. ¶¶ 25, 27, 30); and (3) as Acting Director of the PEPR, performing administrative functions, such as scheduling and assigning ALJs, in addition to serving as an ALJ herself. Coleman Decl. ¶¶ 25-26. Plaintiffs cite no authority suggesting that the Due Process Clause precludes an agency official from playing both administrative and adjudicatory roles, or from serving in a fact-finding role in some cases and an appellate role in others. Indeed, our own judicial system embodies both practices: judges often serve administrative functions in addition to deciding cases, and trial-court judges often sit by designation on appellate courts (albeit in cases other than those in which they participated at the trial-court level—a limitation that Coleman likewise respected here).

Plaintiffs' claim that Coleman's decisions as ALJ demonstrate bias is likewise meritless. "[J]udicial rulings alone almost never constitute a valid basis for a bias . . . motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). In any event, Coleman's decisions show her evenhandedness, not her bias. Coleman often ruled in favor of Plaintiffs—for example, in deciding which workers belong in a bargaining unit or whether to hold an election, Ex. A(44)— and granted the employer's motions for particularization of ULP charges, Exs. A(23) (Crist),

B(16) (Porpiglia), D(19) (Lynn-Ette). Her decisions also reflect careful attention to the facts of

each case, devoid of ideological bias. *Compare* Ex. A(44) (deciding one farm's packing workers

had sufficient community of interest with orchard workers to be included in same bargaining

unit), *with* Ex. B(35) (reaching opposite conclusion for another farm where there was less

overlap in the work assigned to the two types of workers); *see* Coleman Decl. ¶¶ 122-124; 166-

167.

### 5. Compulsory Impasse Arbitration Does Not Violate Plaintiffs' Due Process or Equal Protection Rights (Count V)

There is no merit to Plaintiffs' claims that the compulsory impasse arbitration provision

in FLFLPA is both "unprecedented" and "unconstitutional." (Br. at 10.) Compulsory arbitration

for not-for-profit hospitals was found to be constitutional by the New York Court of Appeals in

*Mount St. Mary's Hospital v. Catherwood*, 26 N.Y.2d 508, 510-11 (1970), a case Plaintiffs cite

in passing without disclosing this critical holding. (Compl. ¶ 274.) There, the plaintiff hospital

refused to submit to mandatory arbitration under SERA § 716 after failing to reach a CBA with

its employees' representative and unsuccessful mediation.[24] The court found that, where the

possibility of a work stoppage by certain employees would run counter to the public interest,

state legislation supplanting the right to strike with compulsory impasse arbitration complies

with due process. *Mount St. Mary's Hosp.*, 26 N.Y.2d at 507-08. And the availability of CPLR

Article 75, which expressly authorizes judicial review of arbitration decisions, provided

sufficient process to uphold the statute against a due process challenge. *Id.*

---

[24] SERA § 716(3) provides that all collective bargaining contracts for not-for-profit hospitals must include a provision for submitting grievances to final and binding arbitration. SERA § 716(4) provides for final and binding arbitration to mediate labor disputes in the absence of a collective bargaining agreement.

More particularly, the court interpreted CPLR Article 75 as authorizing review of both consensual and mandatory arbitration decisions, which, in the court's view, provided sufficient procedural due process to survive constitutional challenge. Because the hospital is "so affected with a profound public interest directly related to the health and lives in the community . . . there is no doubt that the extraordinary provision for compulsory arbitration is constitutionally justified." *Id.* at 510. Rejecting the plaintiff's substantive due process claims, the court found that "the limited review of awards indicated, but no less than such review, is both warranted and sufficient." *Id.* at 511. The court also rejected the plaintiff's equal protection claims, holding that even if the law applied differently to not-for-profit hospitals as compared with "proprietary ones," this difference was not "entirely arbitrary or invidious." *Id*.

The New York Legislature likewise had a rational basis for supplanting farmworkers' right to strike with a system of compulsory impasse arbitration. Under that system, if bargaining and mediation fail, the parties choose an arbitrator, who must consider relevant factors when awarding labor contracts, which are subject to judicial review. Conley Decl. ¶¶ 7-17. The system thus allows farmworkers to exercise their constitutional right to bargain collectively while protecting farms from the potentially crippling effects of a strike on their seasonal business.

In *Gerawan Farming, Inc. v. Agric. Lab. Rels. Bd.*, 405 P.3d 1087 (Cal. 2017), *cert. denied* 139 S. Ct. 60 (2018), the California Supreme Court considered a similar challenge and found that compulsory arbitration complied with due process requirements. *See also Hess Collection Winery v. Agric. Lab. Rels. Bd.*, 140 Cal. App. 4th 1584, 1597, 1601 (Cal. Ct. App. 2006). In *Gerawan*, plaintiff farmers sought review of a mediator-imposed contract, claiming the mandatory mediation and conciliation provision violated substantive due process and equal protection principles and improperly delegated legislative authority. 405 P.3d at 1089. While

noting that compulsory arbitration is unauthorized under the NLRA, *Gerawan* found that "there is no indication . . . that compulsory arbitration in areas *not* covered by the NLRA such as agricultural labor relations, would be unconstitutional." *Id.* at 1096.[25] *Gerawan* found that the statute did not violate the Equal Protection Clause "because the Legislature had a rational basis for enacting the [mandatory mediation and conciliation] statute to facilitate collective bargaining agreements between agricultural employers and employees." *Id.* And *Gerawan* found that the statute did not improperly delegate legislative power because of the procedural safeguards and review available. *Id.* at 1100.[26]

Because the New York Legislature had a rational basis for creating the compulsory impasse arbitration of FLFLPA and appropriately provided judicial review of mandated contracts, Plaintiffs are unlikely to succeed on their claims that these provisions violate their due process or equal protection right.[27]

---

[25] *Gerawan* also rejected the plaintiff's reliance on *Charles Wolff Packing Co. v. Ct. of Indus. Rels.*, 262 U.S. 522 (1923), and its progeny, which Plaintiffs here also rely on, finding that *Wolff*'s restrictive view of the state's police power and analysis of the "liberty of contract" under the Fourteenth Amendment had been "completely repudiated." Gerawan, 405 P.3d at 1095.

[26] Statutory arbitration provisions like those in FLFLPA also have analogs in public-sector employment. For example, the Federal Railway Labor Act "promote[s] stability in labor-management relations" by prohibiting strikes by railway or airline workers that would negatively impact interstate commerce and by "establish[ing] a mandatory arbitral mechanism" for disputes, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994), including the "formation of collective agreements or efforts to secure them." *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 302 (1989); *see also* 45 U.S.C.A. § 151a (describing the general purposes of the Railway Labor Act). Similar provisions exist for public-sector workers in New York under the Taylor Law § 209, N.Y. Lab. Law § 209.

[27] The cases relied on by Plaintiffs, (Br. at 18), are inapposite because they apply the NLRA, which permits employees to strike. *See H.K. Porter Co. NLRB*, 397 U.S. 99, 109 (1970) (recognizing that under the NLRA strikes may result from bargaining impasse); *Jones & Laughlin*, 301 U.S. at 629-30 (finding the NLRA constitutional).

### 6. FLFLPA Does Not Violate the First Amendment (Count VI)

Plaintiffs have likewise failed to show a likelihood of success on their claim that FLFLPA § 704-b(2)(c) violates their First Amendment rights. As a threshold matter, Plaintiffs' First Amendment claim—like their vagueness claim discussed below—must be construed to assert a facial challenge to § 704-b(2)(c) because Plaintiffs do not rely on any particular application of that provision to them. Indeed, PERB has not yet applied § 704-b(2)(c) to Plaintiffs—or to any party, for that matter. And while Plaintiffs allude to ULP charges that the union has filed against them for violating § 704-b(2)(c), their First Amendment claim does not rely on—or even discuss—the particulars of those charges. A facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In assessing a facial challenge to a state statute, moreover, a "federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." *Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989).

Under the doctrine of constitutional avoidance, when a question is raised about the constitutionality of a statute, courts "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided," and, if so, they adopt that construction. *Jennings v. Rodriguez,* 583 U.S. 281, 296 (2018) (quotation marks omitted); *accord Overstock.com, Inc. v. N.Y. St. Dept. of Taxation & Fin.*, 20 N.Y.3d 586, 593 (2013) (articulating same principle under New York law). Underlying this principle is the basic presumption that the legislature "does not casually authorize administrative agencies to interpret a statute to push the limit of congressional authority." *Solid Waste Agency of Northern Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172-73 (2001).

Here, a constitutional interpretation of § 704-b(2)(c) is not only possible; it is the very interpretation adopted by PERB, the agency that is responsible for enforcing the statute—and whose "limiting construction" must therefore be considered on this facial challenge, *see Ward*, 491 U.S. at 795-96. While PERB has not yet had occasion to apply § 704-b(2)(c) to an actual controversy—a fact that renders Plaintiffs' constitutional claims premature, as explained above—PERB's recent guidance interprets SERA generally to permit "an employer's expression of opinion, under circumstances that make it clear that the employer will neither penalize nor reward employees based on their protected activity, and which makes clear that the employer will respect the rights of employees." Coleman Decl. ¶ 382; Exs. N(1, 5). This interpretation safeguards the "First Amendment right of employers to engage in *noncoercive* speech about unionization"—the only right Plaintiffs purport to assert here. (Br. at 9 (quoting *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 67 (2008) (emphasis added)). There is thus every reason to think that New York's courts will adopt that interpretation as well. *See Overstock.com, Inc.*, 20 N.Y.3d at 597.

Indeed, the U.S. Supreme Court applied the same construction to a similar restriction on employer speech in the original NLRA, as enacted by the Wagner Act. *See NLRB v. Va. Electric & Power Co.*, 314 U.S. 469 (1941). By interpreting the Wagner Act to avoid potential conflict with the First Amendment, the court held that employer speech does not violate the statute provided it is not part of a coercive course of conduct. *Id.* at 479-80. Congress later codified this limitation when it amended the NLRA through the Taft-Hartley Act. *See* 29 U.S.C. § 158(c) ("The expressing of any views, argument, or opinion . . . shall not constitute or be evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit."). And the Supreme Court has continued to apply this principle to labor cases. *See, e.g.*,

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (a union's distribution of pamphlets urging shoppers to boycott a mall did not violate the NLRA because it was not coercive); *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002) (adopting a limiting interpretation of 29 U.S.C. § 158(a)(1) by which an employer's lawsuit does not constitute retaliation under the NLRA unless objectively baseless).

PERB and New York courts have applied a similar construction to the longstanding restriction on employer speech in SERA § 704(5).[28] Although § 704(5) differs from § 704-b(2)(c) in that it expressly prohibits employers from discouraging union membership "by discrimination in regard to hire or tenure or in any term or condition of employment," both provisions can and should be construed, consistent with First Amendment principles, as applying solely to employer speech that forms part of a coercive course of conduct. Examples include "threatening or cajoling" employees, *N.Y.S. Lab. Rels. Bd. v. Toffenetti Rest. Co.*, 180 Misc. 327, 327 (Sup. Ct. N.Y. Cnty. 1943); terminating employees after they joined the union, *Stork Rest. v. Boland*, 282 N.Y. 256, 263 (1940); conditioning an employment offer on membership in a particular union, *N.Y.S. Lab. Rels. Bd. v. Club Transp. Corp.*, 275 A.D. 536, 537 (2nd Dep't 1949); evicting residential employees from housing because of union activity, *N.Y.S. Lab. Rels. Bd. v. Elenberg*, 80 N.Y.S.2d 616, 618 (Sup. Ct. Bronx Cnty. 1948); moving the business site to punish unionizing employees, *Abrams v. Allen*, 297 N.Y. 52, 54 (1947); and offering money or other things of value to employees if they do not join a union, *In re Almroth*, 171 Misc. 314, 316

---

[28] To the extent Plaintiffs challenge SERA § 704(5) on First Amendment grounds (*see* Compl. ¶¶ 383-384), that claim fails for the same reason that their challenge to SERA § 704-b(2)(c) fails: Both provisions can be and have been construed as applying only to speech that forms part of a coercive course of conduct. And to the extent Plaintiffs raise a First Amendment claim challenging SERA § 704(4)'s restriction on conditioning a worker's employment on joining a "company union" or refraining from joining a union of his own choosing, (*see* Compl. ¶¶ 382-384), that provision does not prohibit speech at all but rather a coercive term of employment.

(Sup. Ct. Albany Cnty. 1939). In contrast, where an employer's speech consists of "statements of fact" and "an appeal to reason," without "threats of economic reprisal, duress, or coercion," SERA precedent has long deemed it "privileged as free speech." *James McCreery and Co.*, Ex. O(5), 11 SLRB 59, 63-64 (1948); *see also Harris, Upham, & Co.*, Ex. O(10), 10 SLRB 279, 284-91 (1947).[29]

### 7. Plaintiffs' Vagueness Challenge Likewise Lacks Merit (Count IV)

Plaintiffs are equally unlikely to succeed on their claim that FLFLPA § 704-b(2)(c) and other challenged provisions are unconstitutionally vague. A statute is impermissibly vague under the Due Process Clause if (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)). Plaintiffs cannot make this showing as to any of the provisions challenged here—especially given the particularly rigorous standard governing a facial vagueness challenge, *see Copeland v. Vance*, 893 F.3d 101, 110-11 (2d Cir. 2018).

As to FLFLPA § 704-b(2)(c), Plaintiffs premise their vagueness argument on language prohibiting "discourag[ing]" union activity. (Br. at 9-10.) For the reasons explained above, however, there is no reason to think that the subject language will be read more broadly than what the First Amendment permits—namely, prohibiting *coercively* discouraging union activity. Plaintiffs are thus unlikely to prevail on their vagueness challenge.[30]

---

[29] Aside from the provisions restricting coercive employer speech in SERA §§ 704-b(2)(c) and 704(b)(5), nothing else in FLFPLA—including the provisions authorizing certification via card check—even purports to restrict employer speech. Any First Amendment challenge to those provisions that Plaintiffs may seek to assert is therefore meritless.

[30] Where, as here, resolution of a constitutional question turns on the interpretation of a state statute, state courts should "have the final word on the interpretation" of the statute. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 56 (2017) (Sotomayor, J., concurring). Because

Plaintiffs' vagueness challenge to other FLFLPA and SERA provisions is also unlikely to succeed. There is no merit to Plaintiffs' claim that SERA §§ 705(1) and (3) contain vague terms, such as "question or controversy," "shall investigate," "in any such investigation, the board shall provide for an appropriate hearing upon due notice," and "clear and convincing evidence." (Compl. ¶¶ 315-318.) These terms are common in legal parlance and have well-understood meanings. *See, e.g.*, *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 97 (2d Cir. 2011) (a requirement for this Court's jurisdiction is that there be an "actual case and controversy"); *NLRB v. Windham Cmty. Mem'l Hosp.*, 577 F.2d 805, 811 (2d Cir. 1978) ("clear and convincing" standard applied in interpreting NLRA provisions).[31]

Equally meritless is Plaintiffs' vagueness challenge to SERA § 709, (Compl. ¶ 319), on the ground that the following italicized terms are vague: "Any person who shall wilfully *resist, prevent, impede, or interfere* with any member of the board or any of its agents or agencies in the performance of duties pursuant to this article, or who shall in any manner *interfere* with the free exercise by employees of their right to select representatives in an election . . . shall be punished by a fine of not more than [$5,000] or by imprisonment for not more than one year, or both." SERA § 709 (emphasis added). It is "clear what the [statute] as a whole prohibits": conduct that

---

PERB and the state courts have not had an opportunity to interpret § 704-b(2)(c) and its limits, abstention or alternatively certification of the question to the New York Court of Appeals could be warranted, but not a preliminary injunction enjoining the provision now. *See, e.g.*, *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 151 (2d Cir. 2001), *certification accepted*, 96 N.Y.2d 931 (2001), *and certified questions answered*, 98 N.Y.2d 198 (2002).

[31] Plaintiffs are mistaken in asserting that PERB has interpreted SERA § 705(1) and the requirement of clear and convincing evidence "so as to not allow consideration of affidavits and declarations." (Compl. ¶ 318). The record shows the opposite: that the ALJ considered the worker statements that Plaintiffs submitted. *See* Ex. B(35)-19 (ALJ's finding as to "employee statements" put forth by Porpiglia); Ex. C(35)-21-22 (ALJ discussion of statements put forth by Kirby); *see also Paumanok*, Ex. O(11), 55 PERB ¶ 3401, 2022 WL 4235050 (2022) (discussing employer affidavits).

does not permit PERB employees to perform their duties or does not permit workers to exercise their right to select or not select a representative. *See Hill*, 530 U.S. at 733.

Moreover, § 709[32] has been included in SERA since its original enactment in 1937 and is patterned on a similarly worded provision of the NLRA in effect since 1935. *See* 29 U.S.C. § 162 ("Any person who shall willfully resist, prevent, impede, or interfere with any member of the Board or any of its agents or agencies in the performance of duties . . . shall be punished by a fine of not more than [$5,000] or by imprisonment for not more than one year, or both."). Plaintiffs do not allege that they have engaged in violations of this provision or that it is being enforced against them. (*See* Compl. ¶ 319.) In a facial challenge, the court would have to "speculat[e] about possible vagueness in hypothetical situations not before the Court." *Hill*, 530 U.S. at 733. And this speculation "will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Id.* (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). Because these provisions have not been held to be vague in the more than 80 years they have been in effect, Plaintiffs' claim is unduly speculative and not likely to succeed.[33]

### 8. Plaintiffs' Equal Protection Claims Lack Merit (Count V and IX)

Plaintiffs are unlikely to succeed on their claim that FLFLPA violates their equal protection rights by distinguishing between agricultural employers and other private-sector employers. (*See* Compl. ¶¶ 326, 379-391.)[34] The challenged classification neither involves a

---

[32] Plaintiffs suggest that they could face criminal prosecution for any violation of SERA (*see* Compl. at 3), but they are mistaken. SERA § 709 applies to a narrow set of circumstances.

[33] While Plaintiffs claim that the SERA Rules are also unconstitutionally vague, they do not identify which SERA Rules they are challenging, much less establish a likelihood of success on their claim challenging those rules.

[34] Plaintiffs purport to challenge various aspects of New York's collective-bargaining scheme on the basis that they infringe on the First Amendment right of association. But to the extent New York's scheme implicates any association rights, it is those of farmworkers, not employers.

suspect classification such as race or national origin, *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985), nor implicates a "fundamental right," *see City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Specifically, as explained above, FLFLPA neither infringes on Plaintiffs' First Amendment rights nor treats agricultural employers differently from other employers with respect to their expressive activity. As a result, the distinctions that FLFLPA draws between the agricultural industry and many, albeit not all, other industries—for example, in prohibiting farmworkers from striking and providing for compulsory arbitration—is subject to rational basis review and must be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). As explained above, New York's legislature had an amply rational basis for enacting FLFLPA as a means of reconciling farmworkers' fundamental constitutional right to bargain collectively with the unique vulnerabilities of the highly seasonal agricultural industry.[35]

Equally meritless is Plaintiffs' "class of one" claim, (Compl. ¶ 326), challenging FLFLPA's compulsory arbitration system on the ground that, by adopting a process that potentially enables individual agricultural employers to enter into CBAs with their employees containing their own unique contract terms, it improperly distinguishes among those employers. Even assuming that a "class of one" claim can be asserted to challenge the type of discretionary determination at issue here, *see Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140-143 (2d Cir. 2010) (explaining limited scope of such claims), the challenged scheme would readily pass rational basis review. As the court in *Gerawan* explained, compulsory arbitration's

---

Plaintiffs cite no authority suggesting, for example, that certifying an organization to represent *employees* in collective bargaining implicates the association rights of employers in any way.

[35] Plaintiffs also purport to challenge the distinction between company unions and labor organizations in SERA § 704(4), (Complaint ¶¶ 381-384), but this distinction does not support an equal protection claim because the two types of organizations are not similarly situated.

individualized contract award process is "rationally related to the Legislature's legitimate interest in ensuring that collective bargaining agreements are tailored to the unique circumstances of each employer." *Gerawan*, 405 P.3d at 1099. Plaintiffs' claim also fails because they have not put forth any comparators that satisfy the "stringent similarity" requirement for establishing a "class of one" claim. *See Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019) (dismissing such a claim because none of the proffered comparators were sufficiently similar).

### C. Plaintiffs Have Not Alleged Irreparable Harm or Demonstrated that an Injunction Is in the Public Interest

In addition to failing to show a likelihood of success on the merits, Plaintiffs have failed to establish irreparable harm or that a preliminary injunction would be in the public interest. "[I]rreparable harm must be shown to be actual and imminent, not remote or speculative." *Rochester Drug Coop., Inc. v. Hiscox Ins. Co.*, 466 F. Supp. 3d 337, 349 (W.D.N.Y. 2020) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). Given that none of the PERB proceedings involving Plaintiffs have resulted in a final determination and that any such determination must survive state-court judicial review before it can be enforced, Plaintiffs face no imminent risk of harm.[36] *See Vegetable Growers I*, 474 F. Supp. 3d at 586. Moreover, the Second Circuit does not automatically presume irreparable harm in cases involving the abridgement of First Amendment rights; rather, "irreparable harm must be shown—rather than simply presumed—by establishing an actual chilling effect." *See Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003). Plaintiffs have failed to establish any such chilling effect. Indeed, they have not established that FLFLPA prohibits any speech protected by

---

[36] Among the issues on administrative appeals stayed pending this litigation are whether: (1) H-2A workers should be included in bargaining units; (2) unions were properly certified; (3) unions engaged in fraud in obtaining dues deductions cards; and (4) failure to hold a hearing was a due process violation.

the First Amendment at all, much less that it chills them from engaging in specific forms of constitutionally protected speech.

Plaintiffs have also failed to show that a preliminary injunction is in the public interest. *See Cent. Rabbinical Cong.*, 763 F.3d at 192; *Vegetable Growers I*, 474 F. Supp. 3d at 586. Even when a complaint includes a First Amendment claim, the movant must show that such hardships outweigh the public interest. *See New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020), *cert denied*, 141 S. Ct. 1292 (2021). Plaintiffs have not shown that the hardships faced by speculative restrictions on their speech or requiring them to exhaust their administrative and state court remedies outweigh the public interest in protecting farmworkers' right to organize and collectively bargain.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs have failed to demonstrate a likelihood of success on the merits and a threat of irreparable harm to satisfy their burden to show that the extraordinary remedy of a preliminary injunction is warranted. Accordingly, Defendants respectfully request that Plaintiffs' motion for a preliminary injunction be denied in its entirety.

Dated:  New York, New York
        January 12, 202

                                        Respectfully submitted,

KAREN CACACE                            LETITIA JAMES
Bureau Chief                            ATTORNEY GENERAL OF NEW YORK
Labor Bureau


YOUNG LEE                               28 Liberty Street
Deputy Bureau Chief                     New York, New York 10005
Labor Bureau                            (212) 416-6251


                                        By:    /s/ Karen Cacace_____

                                        Karen Cacace
                                        Anielka Sanchez Godinez
                                        Assistant Attorneys General

                                        Abigail Ramos
                                        Attorney General Fellow