UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NEW YORK STATE VEGETABLE
GROWERS ASSOCIATION, INC, A &
J KIRBY FARMS, LLC, PORPIGLIA
FARMS, INC., CRIST BROS.
ORCHARDS, INC., CAHOON
FARMS, INC., LYNN-ETTE & SONS,
INC.,

         Plaintiffs,

v.
                23-CV-1044 (JLS)

LETITIA JAMES, in her official
capacity as Attorney General of New
York, JOHN WIERNIUS, in his
official capacity as Chairperson of the
New York Public Employment
Relations Board, SARAH G.
COLEMAN, in her official capacity as
the Deputy Chair of the New York
Public Employment Relations Board,
MARIAM MANICHAIKUL, in her
official capacity as the Director of the
New York Public Employment
Relations Boards Office of Private
Employment Practices &
Representation and an Administrative
Law Judge of New York Public
Employment Relations Board,

         Defendants.

---

## DECISION AND ORDER

  Plaintiffs, New York State Vegetable Growers Association, Inc., and five New York State farms, commenced this case on October 2, 2023. They allege claims against Defendants, New York State Attorney General Letitia James and three officials from the New York State Public Employment Relations Board ("PERB").

Plaintiffs claim that 2020 amendments to the State Employment Relations Act ("SERA"), enacted as part of the Farm Laborers Fair Labor Practices Act ("FLFLPA"), violate the United States Constitution in various ways. *See* Dkt. 1.

Plaintiffs moved for a temporary restraining order ("TRO") and a preliminary injunction ("PI"). Dkt. 2. After a status conference, the parties reached a stipulation regarding the TRO portion of Plaintiffs' motion. *See* Dkt. 22; Dkt. 23.

In addition to briefing from the parties on the PI portion of Plaintiffs' motion, the Court allowed briefing from various *amici*. Those submissions include three briefs from *amici* supporting Defendants and two briefs from *amici* supporting Plaintiffs; and the United States Department of Justice filed a Statement of Interest regarding Plaintiffs' preemption claim. *See* Dkt. 79; Dkt. 82; Dkt. 83; Dkt. 85; Dkt. 99; Dkt. 106.

Earlier today, the Court held a preliminary injunction hearing, which, based on the parties' agreement, consisted of the written record and oral argument, without live testimony. The Court resolved the various issues raised by Plaintiffs' motion from the bench, in an effort to facilitate a timely resolution of the PI motion and allow one, the other, or both parties to seek appellate review without delay. This brief, written decision and order summarizes the Court's bench decision granting, in part, and denying, in part, Plaintiffs' motion for a preliminary injunction. The transcript from the hearing contains a more fulsome discussion of the issues and is incorporated here.

I.      **Preliminary Injunction Standard**

To succeed on their motion, Plaintiffs must demonstrate: (1) irreparable harm; (2) a likelihood of success on the merits; and (3) that a preliminary injunction is in the public interest. *See Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). They must meet the likelihood-of-success standard because they seek an injunction that "would stay government action taken in the public interest pursuant to a statutory or regulatory scheme." *See Bronx Household of Faith v. Bd. of Educ. of N.Y. City*, 331 F.3d 342, 349 (2d Cir. 2003).

II.     **Standing**

Standing relates to a court's constitutional power to hear and decide a case and, therefore, implicates subject-matter jurisdiction. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In addition to those requirements, a person or entity ordinarily "may not claim standing . . . to vindicate the constitutional rights of some third party." *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (internal quotation marks and citations omitted). An exception to this general rule exists where: (1) "the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter"; and (2) "there is some

3

genuine obstacle to" the "ability of the third party to assert his [or her] own right." *Id.* at 115–16.

Numerous courts have concluded that the employer-employee relationship does not meet the requirements for third-party standing. *See, e.g., Rover Pipeline LLC v. Zwick*, 2022 WL 17336502, at *3–*5 (6th Cir. Nov. 30, 2022) (assuming, without deciding, that employer had a sufficiently close relationship with employees, but holding that the employer "point[ed] to no affirmative obstacle preventing workers from suing on their own behalf"); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 810 (11th Cir. 1993) (noting that, "[i]n cases allowing third-party standing, the relationship between the party asserting the right and the third party has been characterized by a strong identity of interests[,] which is absent in an employer/employee relationship," and that "the employee/employer relationship [was] not such that the employer would be nearly as effective a proponent as the employees"); *Fire Equip. Mfrs. Ass'n, Inc. v. Marshall*, 679 F.2d 679, 681 (7th Cir. 1982) (court did "not believe that manufacturers or trade associations [were] the most effective advocate of employee interests" regarding an OSHA rule).

Here, Plaintiffs assert several claims regarding the rights of farmworkers—specifically: (1) a due process and equal protection claim related to the card-check process in the FLFLPA; (2) a First Amendment/compelled speech claim based on *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. ---, 138 S. Ct. 2448 (2018); (3) a First Amendment claim based on the absence of a

4

decertification procedure and a right to refrain in the FLFLPA; and (4) an equal protection claim based on disparate treatment of agricultural employers and employees, as alleged on the employees' behalf. *See* Dkt. 1, at 81–84, 86–95.[1]

Plaintiffs, an association of growers and individual farms, do not have a sufficiently close relationship with farmworkers to raise constitutional claims on their behalf. In the labor context, in particular, the Court cannot conclude that farm employers' and farmworkers' interests are sufficiently aligned to make the employers as effective a proponent for the farmworkers' rights as the farmworkers themselves. Moreover, Plaintiffs did not demonstrate that some obstacle exists to inhibit farmworkers from asserting these constitutional claims in state or federal court on their own behalf.

Plaintiffs therefore may not rely on these *farmworker* rights-based claims to obtain a preliminary injunction here. They have standing only to assert the remainder of their claims regarding *farm employers'* rights.

### III.   Ripeness

A case is constitutionally ripe when "a concrete dispute affect[s] cognizable current concerns of the parties." *N.Y.C.L.U. v. Grandeau*, 528 F.3d 122, 131 (2d Cir. 2008) (internal quotation marks and citation omitted). In other words, constitutional ripeness asks whether "the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Nat'l Org. for*

---

[1] Page references to docket entries are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

*Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan*, 504 U.S. at 560).

Here, Plaintiffs' equal protection claim on a class-of-one theory is not constitutionally ripe. They base this claim on the compulsory impasse arbitration component of the FLFLPA, arguing that arbitration will result in different collective-bargaining agreements (which Plaintiffs call "regulations") for each agricultural employer who goes through the process—including those who are similarly situated to one another. But Plaintiffs acknowledge that they have not yet been subject to compulsory impasse arbitration, let alone that the process has resulted in collective-bargaining agreements that affect similarly situated agricultural employers differently. As a result, this claim is not constitutionally ripe and, thus, Plaintiffs may not rely on it to obtain a preliminary injunction.

The remaining claims—*e.g.*, preemption related to recalling H-2A workers, First Amendment based on employers' rights, procedural due process related to compulsory impasse arbitration, and equal protection based on classification—under all of the facts alleged and evidence presented, are constitutionally ripe.[2]

---

[2] Prudential ripeness is "a more flexible doctrine of judicial prudence" that reflects a court's conclusion that a case "will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003) (emphasis in original). This doctrine exists in tension with a federal court's "virtually unflagging" obligation to "hear and decide cases within its jurisdiction." *Lab. Council for Latin Am. Advancement v. U.S. Env't Prot. Agency*, 12 F.4th 234, 252–53 (2d Cir. 2021) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)). Given that the Court has jurisdiction over these remaining claims, and that the case is in its early stages, the

IV.     Likelihood of Success on the Merits

   A.   First Amendment challenge to SERA § 704-b(2)(c)

Plaintiffs assert a facial First Amendment challenge to SERA § 704-b(2)(c), which provides: "It shall be an unfair labor practice for an agricultural employer to: . . . discourage union organization or to discourage an employee from participating in a union organizing drive, engaging in protected concerted activity, or otherwise exercising the rights guaranteed under this article." They claim that this provision is impermissible viewpoint discrimination.

Through the Fourteenth Amendment, the First Amendment prohibits states from enacting laws that abridge the freedom of speech. *Reed v. Town of Gilbert, Az.*, 576 U.S. 155, 163 (2015) (citing U.S. Const. amend. I). States may not "restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* (internal quotation marks and citation omitted); *see also Iancu v. Brunetti*, 588 U.S. ---, 139 S. Ct. 2294, 2299 (2019) ("The government may not discriminate against speech based on the ideas or opinions it conveys."). Laws that target speech based on its content "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

A facial challenge to a statute is based on "only the text of the statute itself, [and] not its application to the particular circumstances of an individual." *Field*

---

Court considers, in its irreparable harm analysis, any concerns that also may bear on prudential ripeness.

7

*Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). When considering facial First Amendment challenges, courts "may examine not only the text of the [statute], but also any binding judicial or administrative construction of it." *Id.* at 176 (internal quotation marks and citation omitted); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 795–96 (1989) ("[a]dministrative interpretation and implementation of a regulation [or statute]" are "highly relevant" to analyzing a facial challenge because, in such analysis, courts must "consider any limiting construction that a state court or enforcement agency has proffered") (internal quotation marks and citation omitted).

But the limits that a proponent of a challenged statute claims are implicit must "be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988). Courts "will not write nonbinding limits into a silent state statute." *Id.*

If no state interpretation exists, "federal courts 'will presume any narrowing construction or practice to which the law is fairly susceptible.'" *Field Day*, 463 F.3d at 177 (quoting *City of Lakewood*, 486 U.S. at 770 n.11). Courts will construe a challenged statute to avoid serious constitutional problems, unless such a construction clearly conflicts with the legislature's intent. *Id.* They will not, however, "rewrite a law to conform it to constitutional requirements." *Iancu*, 588 U.S. ---, 139 S. Ct. at 2301 (declining to adopt government's proposed construction of the Lanham Act, which would eliminate the impermissible viewpoint

8

discrimination, because Court could not "see [the limiting construction] in the statutory language") (internal quotation marks and citation omitted).

In the labor context, the Supreme Court has "recognized the First Amendment right of employers to engage in noncoercive speech about unionization." *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 67 (2008) (citation omitted). In other words, an employer may "express[] its view on labor policies or problems unless the employer's speech in connection with other circumstances amounts to coercion." *Id.* at 66–67 (quoting *N.L.R.B. v. Va. Elec. & Power Co.*, 314 U.S. 469, 477 (1941)) (internal quotation marks and alteration omitted); *see also N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575, 616–18 (1969) (The NLRA "merely implements the First Amendment by requiring that the expression of 'any views, argument, or opinion' shall not be 'evidence of an unfair labor practice,' so long as such expression contains 'no threat of reprisal or force or promise of benefit' in violation of [Section] 8(a)(1)[, which] in turn, prohibits interference, restraint or coercion of employees in the exercise of their right to self-organization.") (internal citation omitted).

SERA § 704-b(2)(c) is a viewpoint-based law that discriminates against speech based on the ideas or opinions conveyed. It prohibits speech that "discourage[s]" union organization but allows speech that encourages union organization. *See Iancu*, 588 U.S. ---, 139 S. Ct. at 2300 (because Lanham Act "allow[ed] registration of marks when their messages accord with, but not when their messages defy, society's sense of decency or propriety," it contained "facial

viewpoint bias"). As a result, the provision is "presumptively unconstitutional."[3] *See Reed*, 576 U.S. at 163.

Because Plaintiffs assert a facial challenge to SERA § 704-b(2)(c), the Court considers the (1) text of the statute, (2) any binding judicial construction, (3) any binding administrative construction, (4) any limiting construction proffered by an enforcement agency, and (5) any other narrowing construction to which the provision is fairly susceptible. Neither party cites binding judicial or binding administrative constructions. Nor has anyone offered examples to establish a general practice of how the provision has been applied.

Defendants offer the "Initial Guide to Collective Bargaining Rights and Responsibilities Under the Farm Laborers and Fair Labor Practices Act," prepared by PERB Chair John F. Wirenius (Dkt. 57 (2019 version); Dkt. 57-4 (2020 version)). This document provides examples of conduct that has, and has not, been held to constitute "discouragement" of union organization in other general contexts to guide employers. It also summarizes and cites precedent under the National Labor Relations Act ("NLRA"), including that: "The expressing of any views, argument, or opinion, or the dissemination thereof, . . . shall not constitute or be evidence of an unfair labor practice . . . , if such expression contains no threat of reprisal or force or promise of benefit." Dkt. 57, at 13; Dkt. 57-4, at 15. The document recognizes that SERA § 704-b(2)(c) "does not have an equivalent provision" to the one in the NLRA,

---

[3] At this stage, Defendants have not meaningfully attempted to demonstrate how SERA § 704-b(2)(c) is narrowly tailored to meet compelling state interests. *See Reed*, 576 U.S. at 163.

but states, "expression of opinion, under circumstances that make it clear that the employer will neither penalize nor reward employees based on their protected activity, and which makes clear that the employer will respect the rights of employees[,] will most likely not constitute a basis for [an unfair labor practice] charge." Dkt. 57, at 13; Dkt. 57-4, at 15–16.

This "Initial Guide" document provides some guidance to employers about SERA § 704-b(2)(c). But the document is not binding on the enforcement agency, PERB. As such, it cannot remedy the statute's impermissible viewpoint discrimination on Plaintiffs' facial challenge.

Moreover, the Court cannot conclude that SERA § 704-b(2)(c) is fairly susceptible of the construction in the "Initial Guide" document because that construction is not visible in the statute. *See Iancu*, 588 U.S. ---, 139 S. Ct. at 2301. To read the statute how Defendants urge would be, in the Supreme Court's words, "not to interpret the statute [the legislature] enacted, but to fashion a new one." *See id.* at 2302.

For these reasons, Plaintiffs are likely to succeed on the merits of their First Amendment challenge to SERA § 704-b(2)(c).

### B. Procedural due process challenge to compulsory impasse arbitration

Procedural due process "imposes constraints on governmental decisions [that] deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S.

11

319, 332 (1976). Due process "is not a technical conception with fixed content unrelated to time, place[,] and circumstances." *Id.* at 334 (internal quotation marks and citation omitted). Its "fundamental requirement . . . is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotation marks and citation omitted).

In the "context of a statutory scheme that involves compulsory arbitration, due process does not guarantee any particular form of state procedure." *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 895 (2d Cir. 1991). Instead, "a state may choose the remedy best adapted, in the legislative judgment, to protect the interests concerned provided its choice is not unreasonable or arbitrary, and the procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard." *Id.* (internal quotation marks and citations omitted). Under this framework, courts that have considered compulsory arbitration provisions in New York statutes that apply to the private sector have upheld those provisions against procedural due process challenges. *See id.* at 895–96 (holding that the compulsory arbitration provision in New York's Lemon Law did not violate the Fourteenth Amendment's Due Process Clause); *Country-Wide Ins. Co. v. Harnett*, 426 F. Supp. 1030, 1033–34 (S.D.N.Y. 1977) (upholding compulsory, binding arbitration provision in New York's no-fault law against a due process challenge), *aff'd*, 431 U.S. 934 (1977).

The FLFLPA provides for compulsory impasse arbitration under certain circumstances, at a particular stage in the collective-bargaining process. The Court

will assume, for purposes of this motion, that the challenged provision implicates a liberty or property interest that belongs to Plaintiffs. Even so, the state legislature was not required to provide any particular form of procedure. Addressing a discrete segment of the private sector that has been excepted from the NLRA, the legislature determined that prohibiting farmworkers from striking was important, and that some substitute was necessary to break any impasse in collective bargaining. The legislature selected compulsory impasse arbitration. In doing so, it provided for a multi-step procedure with abundant process to accompany any potential "deprivation." *See* SERA §§ 702-b(1), (3).

For these reasons, Plaintiffs have not demonstrated that they are likely to succeed on the merits of their procedural due process claim regarding compulsory impasse arbitration.

### C. Equal protection challenge to compulsory impasse arbitration

In "areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). This standard reflects that the Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.*; *see also Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2015). On review, such statutory classifications "bear[] a

strong presumption of validity." *Beach Commc'ns*, 508 U.S. at 314. A party challenging such a classification must "negat[e] every conceivable basis [that] might support it." *Id.* at 315 (internal quotation marks and citation omitted).

Rational-basis review applies to Plaintiffs' challenge to the legislature's decision to differentiate between farm employers and workers, on the one hand, and other segments of the private sector, on the other hand, and to impose a combined no-strike/compulsory impasse arbitration scheme to resolve labor disputes under certain circumstances.[4]

A rational basis for the classification exists. In sum, the legislature deemed strikes unworkable in the agricultural industry because of the potential harm they could cause due to the seasonal nature of the business. The legislature was able to legislate and prohibit strikes here because the NLRA carves out farmworkers from its purview. To mitigate the impact of a no-strike provision on farmworkers' collective bargaining rights, the legislature elected to implement compulsory impasse arbitration under certain circumstances—*e.g.*, if voluntary agreement is not reached and mediation fails.

For these reasons, Plaintiffs are not likely to succeed on the merits of their equal protection claim.

---

[4] Plaintiffs have not sufficiently demonstrated that this classification requires a higher level of scrutiny.

## V.     Irreparable Harm

Before obtaining a preliminary injunction, Plaintiffs must demonstrate that they will experience irreparable harm absent the injunction. They have done so regarding their First Amendment claim. In particular, "[w]here a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." *Bronx Household of Faith*, 331 F.3d at 349. Because Plaintiffs are likely to succeed on the merits of their claim that SERA § 704-b(2)(c) constitutes impermissible viewpoint discrimination, the Court presumes irreparable harm to Plaintiffs absent an injunction on that provision.

But Plaintiffs have not demonstrated irreparable harm regarding their remaining claims. As to preemption and recalling H-2A workers, the possibility of harm is too remote at this time. Plaintiffs' argument is based on a term in a proposed collective-bargaining agreement—not on any specific provision in the statute. Several steps remain in the statutory process before Plaintiffs would be subject to the proposed term regarding H-2A workers—if they ever will be. In sum, there is no irreparable harm currently facing Plaintiffs regarding their purportedly conflicting obligations related to H-2A workers. As such, the Court need not address the preemption argument further at this time.

Nor have Plaintiffs demonstrated irreparable harm absent an injunction regarding any remaining claims.

## VI. <u>Public Interest</u>

A preliminary injunction regarding the enforcement of SERA § 704-b(2)(c) is in the public interest. That provision of the statute, as written, constitutes impermissible viewpoint discrimination and chills employers' speech. A preliminary injunction on this provision does not affect the remainder of the statute and, therefore, has a minimal impact on farmworkers' collective-bargaining rights. Under these circumstances, a preliminary injunction on this narrow issue, fostering freedom of speech, is in the public interest.

## VII. <u>Bond</u>

Federal Rule of Civil Procedure 65(c) instructs the Court to consider whether it should require Plaintiffs to post security and, if so, in what amount. *See Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ("Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement [in certain situations].").

Defendants did not request a bond. Under the circumstances here, the Court will not require Plaintiffs to post security. *See Dr.'s Assocs.*, 107 F.3d at 135–36 (affirming district court's decision not to require security where the district court concluded that enjoined party would not suffer damage or loss").

## **CONCLUSION**

For the above reasons—and for those stated on the record at today's preliminary injunction hearing—the Court GRANTS Plaintiffs' PI motion (Dkt. 2), in part, as to their facial First Amendment challenge to SERA § 704-b(2)(c), and DENIES the balance of their PI motion. No bond is required.

Defendants are hereby enjoined from enforcing SERA § 704-b(2)(c), which provides: "It shall be an unfair labor practice for an agricultural employer to: . . . discourage union organization or to discourage an employee from participating in a union organizing drive, engaging in protected concerted activity, or otherwise exercising the rights guaranteed under this article." This preliminary injunction shall remain in effect pending disposition of the case on the merits.

SO ORDERED.

Dated:      February 21, 2024
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE